IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ELIAS RODRIGUEZ,

Defendant.

Criminal Action
No 1: 25-224

Washington, DC
September 24, 2025

2:02 p.m.

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: Christopher T. Tortorice
DOJ-USAO
601 D St NW
Ste 5.138
Washington, DC 20530

Jeffrey S. Nestler
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001

For the Defendant: Elizabeth Ann Mullin
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF COLUMBIA
625 Indiana Ave,NW
Suite 500
Washington, DC 20004

APPEARANCES CONTINUED ON NEXT PAGE

APPEARANCES CONTINUED

For the Defendant:

Eric Klein
JOHNSON & KLEIN, PLLC
5398 Manhattan Circle
Boulder, CO 80303

Victor J. Abreu
FEDERAL COMMUNITY DEFENDER OFFICE, EDPA
601 Walnut Street
Ste 545 West
Philadelphia, PA 19106

Court Reporter:

Sherry Lindsay
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue, NW
Room 6710
Washington, DC 20001

P R O C E E D I N G S

THE COURTROOM DEPUTY: Criminal case number 25-224, *United States of America versus Elias Rodriguez*.

Would counsel please approach the podium, state their name for the record, starting with government counsel.

MR. NESTLER: Good afternoon, Your Honor. Jeff Nestler appearing on behalf of the United States. With me at counsel table, AUSA Chris Tortorice.

THE COURT: Good afternoon to both of you.

MR. KLEIN: Good afternoon, Your Honor. Eric Klein on behalf of Mr. Rodriguez, along with Elizabeth Mullin and Victor Abreu and Mr. Rodriguez is present in custody.

MR. ABREU: Good afternoon, Your Honor.

THE COURT: Good afternoon to all of you as well.

All right. So we are here on the defense's motion for a schedule order setting a deadline for the defense's presentation of mitigating evidence to the United States Attorneys Office. Since it is the defense's motion, why don't I start with the defense.

MR. KLEIN: Thank you, Your Honor. And thank you, Your Honor, for setting this hearing. I think there is an obvious legal issue I am sure the Court wants to get to about the Court's authority to enter the order we are requesting. And before I address that, I do kind of want to lay out the groundwork for why this is important at this stage. We

absolutely agree with the statement by US Attorney Pirro that the decision whether to pursue the death penalty is a weighty decision that must follow a very weighty process and there will I submit be no more serious case that comes before the Court than a case where somebody's life is potentially on the line.

And this initial weighty decision whether to pursue the death penalty is probably the most consequential decision that will be made in this case as far as determining how the case proceeds. And obviously it is consequential for Mr. Rodriguez because it could impact whether he lives or dies. It is consequential for the Court and the parties because it will impact everything about how this case proceeds from here on.

A defendant facing a death sentence is entitled to greater procedural protections than other defendants. And that is because as the Supreme Court has said, death is different. And so the decision -- the authorization decision will impact everything about how this case proceeds, from the breadth of discovery we get, to how matters including discovery matters will be litigated, how the Court determines the matters before it. And it will impact matters from these initial proceedings, through motions, jury selection and how a trial proceeds should we get there.

So with that, let me I think address probably the most important question I assume the Court has -- is what is

the Court's authority to issue the order we are requesting? The government in its response talks a lot about charging decisions. It says we are asking the Court to interfere in its charging decisions.

And I think it is important that we are very clear that we are not in any way asking the Court to interfere with the decisions the government ultimately makes. If they decide to pursue the death penalty, that is up to the government. The government has made clear that it intends to comply with the death penalty protocol set out in the Justice manual. And that protocol sets out the process by which that decision will be made. And we are not asking the Court to interfere in that process or the ultimate decision. All we are talking about is timing. And this falls squarely within the Court's authority to control its docket and to schedule. I think if the Court looks at the *Jamieson* order, which is not published and we are happy to get a copy to the Court if the Court needs it. It is an order that really says a Court's scheduling of trial and pretrial matters may impact the timing of the DOJ's decision, but does not interfere with the DOJ's ultimate decision to seek or not seek the death penalty.

And the *Jamieson* court went on to say the Court certainly has the power and the obligation to enter scheduling orders that are initiated by the government in this court. And so that is all we are really talking about. This is something

that the Judicial Conference through the guide to judiciary policy has recognized that this Court has authority to do. And really, ultimately, it is not in anyone's interest for the government to make a hasty decision. And I think that is why even the courts who have disagreed -- and we recognize there is disagreement. So even the courts that have said that they did not have authority to enter this kind of order, have often recognized the wisdom of doing so.

You know, the government in its response quotes a recent order in the *Youngblood* decision, with the following sentence is the Court going on to recognize that whether the government follows its own procedure, whether the government needlessly expedites that decision has Sixth Amendment implications. It has -- and they don't -- the Court doesn't say the word Sixth Amendment, but it says it may inadvertently create an issue of ineffective assistance of counsel and give rise to concerns regarding the fair administration of justice in the context of a crucial decision. And so that really is what we are talking about is scheduling to ensure that Mr. Rodriguez receives the effective assistance of counsel at this stage.

So this leads us to another issue about whether this is a critical stage. I think this Court doesn't need to reach this decision, as other courts have said, we are not going to decide what is a critical stage or I think as the *McGill* court

said, we don't agree it is a critical stage. Nevertheless, under the Court's scheduling authority, it entered the order setting a deadline for the defense decision. We submit that those cases that predated the Supreme Court's decision in *Frye* and *Lafler,* those decisions are contrary to what the Supreme Court held in *Frye* and *Lafler* and the government's position that it is not a critical stage because it doesn't affect the right to fair trial that the Supreme Court in *Frye* very much dismissed that argument. And said that plea negotiations, even though there is no court involvement, even though it is about a discretionary process with the government, that that is indeed a critical stage at which counsel is -- a defendant is entitled to the competent assistance of counsel.

And I point the Court to pages 143 and 144, related to the *Frye* decision where the Supreme Court really talks about that. So when we talk about the importance of the Court setting --

THE COURT: Although in the plea context, the defendant is a participant in a way that the defendant is not here. And, obviously, the defendant is a participant here in that his counsel presents mitigating information. But in the plea context, the defendant has to make a knowing, informed decision about whether to go to trial or to accept the plea. If the Court accepts a plea, that does substantially affect the rights -- the trial rights of the defendant. And if the

defendant doesn't accept the plea, that substantially affects the trial rights of the defendant. Whereas here, this does seem to be closer on the continuum to a charging decision.

MR. KLEIN: Well, Your Honor, I -- maybe I have two points on that. There is a role for defense counsel here under the Department of Justice --

THE COURT: I am not saying there is not a role for it, but it is not -- at least at this stage of the process, I don't think it is a legally binding role. There is clearly a role for it, but there is not a statute or a regulation that is binding that says that it is needed. I think it arguably is required before the Attorney General makes her decision about how to proceed, because the Attorney General is required by statute to make a determination in light of all of the circumstances of the offense. And it may not be possible for the Attorney General to actually make that certification to the Court absent input from counsel, but we are not at that stage yet.

MR. KLEIN: I will, of course, agree with everything the Court just said. But I would say this, I think that under the analysis in *Frye* and in *Lafler* and *Padilla versus Kentucky* and *Hill versus Lockhart* before that, that whether the -- it is the input of defense counsel, it is the role that there is a role for defense counsel -- that really is the crucial thing on determining whether something is a critical stage. I think

that is in the *Youngblood* decision when the Court recognizes that. And the *Sines* decision that we cited, which is about deauthorization, that Court and the Eastern District of New York recognized that deauthorization, which is just the other side the authorization coin. That that is a critical stage, even though it is completely within the government's purview whether to offer a plea offer, as in the *Frye* situation or whether to deauthorize the case as in *Sines*. But I think it is also important that the Department of Justice protocol recognizes a role for competent counsel.

THE COURT: Why does that matter, since it is not binding and it is just an internal governance document?

MR. KLEIN: Because it creates a role for competent counsel. I think that if tomorrow the government said, we are getting rid of the protocol or we are not following it in this particular case, that is a very different situation. But because they have said, this life-or-death decision does have a role for defense counsel, then it has to be constitutionally competent defense counsel.

THE COURT: I guess I am not sure why that is the case. So if the Department of Justice in the US Attorney's manual were to say that in a particular category of crimes where there are not exigent circumstances, securities fraud cases, that the government will provide counsel with the opportunity to come in preindictment to make a presentation to

the US Attorney's Office if counsel wants to do so, I'm not sure you would say that the Sixth Amendment right to competent counsel attaches at that point in the process before there is even an indictment, even though the US Attorney manual said that the AUSA should meet with counsel before going to the grand jury for certain classes of crimes.

MR. KLEIN: I think the logic of *Frye* and that line of cases might counsel differently. Because the Supreme Court was very clear in *Frye*. The government does not have to ever extend a plea offer. But when the government engages in plea negotiations and negotiations really were central to that. Then the defendant because that is so important to that case, the defendant becomes entitled to competent counsel, Sixth Amendment competent counsel. So I think that -- I think that where the government engages in that kind of negotiations and that really is this protocol process -- I don't want to say it is a negotiation, but it is akin to a negotiation because the government is getting input from us. And if we were to say, hey, thanks for giving us that opportunity, we are going to sit on our hands and do nothing and the case gets authorized, I think that a defendant there has a very strong argument that he was deprived of constitutionally competent counsel at that critical stage. And that is really -- the *Frye* analysis is really not looking at labels on something, but looking at the practical application. And so really, you know, talk to --

*Frye* talks a lot about, we are a system of pleas. That is the most important decision in a case. In this kind of case, this is the most important decision. And so I think that that logic extends -- graphs itself onto this situation and the Court's hypothetical I think I will say probably would. But I don't think we have to go that far.

Because, you know, another thing is the government has made its charging decision, right, it has made -- it has filed its indictment. So that then puts the ball in the Court's court to then control its schedule. So really, again, what we are talking about here is I think kind of a -- it shouldn't be a big deal. It is the Court setting a schedule.

THE COURT: I was going to ask you about that. I mean, the -- you started off by talking about scheduling issues and putting aside for a moment the Sixth Amendment question, just on scheduling questions I am with you and it is my responsibility to schedule this case in a fair and appropriate manner.

But I'm not sure why the question of when the US attorney makes a recommendation to the Attorney General or to the --

MR. KLEIN: Capital Review Committee.

THE COURT: Capital Review Committee, thank you. That that necessarily dictates the schedule. And one of the things I was thinking about when I was looking at it are

whether we are just approaching this all backwards and instead we ought to be talking about what the schedule should be in the case, including when the notice of intent should be filed and when whatever next steps would come after that, which is clearly within my not only authority, but responsibility to do in the case. And I would think that everything else might fall in place from that. So if I am the US Attorney and I am told that the Court doesn't expect notice of intent to be filed until a particular date and it is not going to actually set further proceedings until after that date, there is not a whole lot of point in saying I am going to rush now to make a recommendation to the Attorney General who can then rush to make a decision and then have it sit there for four months or whatever it might be while there actually is additional valuable information that is being gathered that might weigh on my decision.

And so I suppose my question is, why not approach it from that direction of where the Court just sets the other schedule and then, I really can't imagine why it is the US Attorney would say, but I want to make a decision on this without having all of the information available to me and I know it is going to have no impact on this case. And I will tell you and I will tell everyone in the case, that although it is my responsibility to make sure that the case moves along at a reasonable pace, I also recognize the consequences of this

case and I am going to give you a fair and appropriate opportunity to research and develop whatever mitigating evidence that you would like to do within the bound of reason. And so if that is what is ultimately going to drive my scheduling and saying, look, if there is any potential this is going to be a death penalty case, I am not going to put you in a position in which you are going to trial or you are going to have to make critical decisions on behalf of your client in this case, before you have had the opportunity to do that work, if we set those deadlines. And it may be that everything else falls into place. I don't know.

MR. KLEIN: Well, let me first say, I appreciate the Court's comments and I appreciate the question. And for the question, I think I have a two-part answer. One is a legal answer and one is a practical answer. And legally I don't see any reason the Court -- the Court unquestionably has the authority to set a deadline for the notice of intent. And whether things fall into place from that, I think is the practical question.

THE COURT: Do I have the authority to say that it has to be filed on the deadline and not earlier? That was one thing I was wondering about.

MR. KLEIN: That is an interesting question, maybe I can table that one for a second and talk about I think the practical issue with working backwards, as the Court suggests.

THE COURT: Okay.

MR. KLEIN: Which is that right now, there is no deadline for anything.

THE COURT: Right.

MR. KLEIN: We don't even have a discovery deadline at this point --

THE COURT: Right.

MR. KLEIN: -- and the government is already rushing it. So without any deadline, where the deadline is infinity right now, the government has said, you have until October 20th where they have no pressure to get something done and they have all of the time in the world to conduct that analysis.

And so I think that is, you know, something that as a practical matter, I don't think if the Court says, I am setting a deadline in 2035, that is going to change things because we have nothing right now. And I think in the Benavides decision, you know, that -- the fact that there wasn't even a discovery deadline yet, that was something that mattered.

THE COURT: Although, I suspect that part of what the government's concern may be here -- and I will let the government speak for itself on it. But I suspect part of the concern here just making sure from the outset that there is a reasonable schedule in the case and this isn't a case that drifts for years, before it ever gets to trial and making sure that things proceed in an orderly and reasonably expeditious

basis. And I assume that part of the reason they are pushing early on this issue is it just seems to be the first step in that process.

MR. KLEIN: And I will let the government speak for themself.

THE COURT: Of course.

MR. KLEIN: I think the schedule we have proposed is reasonable. It is in line with what other courts have ordered who -- the Courts that have ordered this kind of deadline. And it's in line with what we have submitted. I know the Court -- or the government quibbles a bit in a footnote about whether we are doing our math right. But still they are coming up with more than ten months from indictment to Capital Review Committee.

THE COURT: I will tell you, I had a case which was a potential death penalty case. And it was months and months and months to when the government indicated to me whether they would seek the death penalty in the case.

MR. KLEIN: Right. And again the US Attorney has talked about this rigorous process and we agree with her that this is and should be a rigorous process. And so all we are saying is, you know, give us -- when we had discussions with the government about this, we proposed eight months. And then we filed a motion with this Court, we have dialed it back to six months. And to be clear, we are talking about our initial

mitigation investigation sufficient to make the submission. We are not saying, this is what we would do at trial, because we know that is a much bigger longer process.

THE COURT: I don't want to put you on the spot by asking you to give away either strategy or issues that you may pursue where it turns out they don't bear fruit at the end of the day and so you don't pursue them further, but it might be helpful if you outline what it is you feel like you need to do in order to make a competent presentation.

MR. KLEIN: Well, let me -- and I appreciate the Court saying, you don't want to put me on the spot. Maybe I can address that generally, rather than specifics.

There is a few things: One, as the government said in its response, we just received what the government characterized as voluminous post-indictment discovery at the beginning of this month. So it is absolutely essential that we have an opportunity to evaluate discovery not just to see the strength of the government's case against us, which is one of the factors under their protocol, but also to mine that for potential mitigating information.

And I can tell the Court our status right now vis-a-vis discovery that we have received is we are still in the process of even figuring what we have. A lot of what the government has produced is not in word searchable format, so we are still figuring that out. And we haven't even had a chance

to talk to the government about whether the discovery log that they produced is accurate.

The indictment relies a lot on social media posts. That is something we need to be able to explore to see if there is context. We need to thoroughly analyze that discovery. We still don't have -- and I think you know, I know there will be more discovery coming. I don't know how much, but there is important things like our client's statements after his arrest, which are featured in the complaint. To our knowledge, and I have checked with everybody working on our discovery, we don't even have that at this stage. We have a lot of electronic discovery of internet stuff and Google but, you know, something that as fundamental as that, we are -- we have not been able to locate that if we have it. That just I think highlights the difficulty of sorting through to figure out what we even have.

THE COURT: I suppose one thing that you might ask of me was if there is discovery you need from the government, would be an order from me directing that it be provided to you before whatever deadline is set for your presentation.

MR. KLEIN: I mean, I think that is something that we certainly would need. Again, we are still figuring out -- government counsel may get up here and say, we have that and that might be -- we can figure it out. I can tell the Court like the -- we received discovery on September 2nd. Just to make a copy of that, download it, takes days and days and days

because of the volume of it. So we are still trying to figure that out.

As far as the mitigation investigation -- and, again, I don't want to get into any details of what we are doing. But I will say, I don't think I can understate the time commitment of an adequate mitigation investigation. And again, you know, I think there is something before we get in front of a jury, but there is also something for this initial stage. And the American Bar Association has guidelines for death penalty proceedings. There is a whole supplementary guidelines on mitigation. And that really focuses on the importance of in person, face to face, one-on-one communications, multiple interviews with not just our client, family members, anybody who might have mitigating information and the importance of establishing trusting relationships.

This is all complicated at this stage also by I don't want to say difficulties but the situation that we as counsel find ourselves in. We have, as the government pointed out, four lawyers on this case. There are three sitting here today because one is in a multi-week trial. In this courthouse. Ms. Shrewsbury, she is not here. I don't think I need to tell the Court that the Federal Public Defenders here are somewhat drinking from a fire hose right now with their cases.

I have been on this case for several months now. And because of the CJA budget, I am not getting paid. I have not

been paid a dime for work on this case.

THE COURT: I will say, as a member of the Defender Services Committee, it is deeply disturbing that our defenders in general, our CJA lawyers are not getting paid. Hopefully that will be fixed soon.

MR. KLEIN: We will see. We -- I appreciate that, Your Honor. We are also facing a possible shutdown coming up in a week. Maybe the Court can look through the couch in its chambers for change.

And, frankly, when I got on this case, I told my law partner -- I am a small, two member firm, that I would not be taking on new private cases, so I could focus on this. Because of the situation, I have had to take on new private cases, which, you know, necessarily means I have to work on those cases and I can't be devoting the amount of time I would like to this. And then so we are left with Mr. Abreu, who is a wonderful lawyer and works hard, but he can't do everything we need to do. And he has other cases that are requiring him to travel internationally and work on his other cases. And so the mitigation investigation that he needs to do is complicated.

THE COURT: And one of the issues that just occurred to me that is potentially time consuming, but, again, I don't want to put you on the spot about this, but I would think that at least in many cases of this nature that there would be a need to engage a mental health professional. And that could be

something that the US Attorney's Office would want to know the results of, if it were something that you did and wanted to share. But that obviously is time consuming.

MR. KLEIN: Absolutely. Again, I don't want to get into the specifics of what we are doing or contemplating. But that is certainly something that we have an obligation to explore. And the ABA guideline is very explicit that that is something we have an obligation to explore.

And another factor to consider that takes time and this is a factor under the Department of Justice protocol is whether Mr. Rodriguez is willing to enter a plea to a life or near-life sentence. And this is something we plan to explore. This is something though that the ABA standards and really the criminal justice standards for the defense function beyond just the death penalty functions standards are very clear that we as lawyers have an obligation to engage in sufficient investigation, which includes reviewing discovery, conducting separate investigation, conducting necessary legal research before we even have those conversations with our client. So when we go to the government with our submission, that is a factor to be considered. And so we need time to be able to make a representation about whether that is --

THE COURT: Would this, in fact, be your final pre-notice submission or is this just the first step in the process that if you learn more before it goes to the Capital

Review Committee or before there is a decision from the Capital Review Committee or before there is a decision from the Attorney General, you would have the opportunity to either engage in plea negotiations that you thought were appropriate or to make a supplemental submission? So you may miss the recommendation from the US Attorney in the process, but the process isn't over.

MR. KLEIN: Well, I think the answer is, yes and maybe. So yes, this is a first step in the process. It is an incredibly important step. The recommendation of the US Attorney has important procedural -- it is important procedurally as far as the protocol, but it is also important as far as that carrying a lot of weight with the attorney general and the Capital Review Committee.

As a practical matter though, we don't know what that timing will be between a meeting with the US Attorney, her recommendation and when we might be called to meet with the Capital Review Committee. I mean, that might be a week, two weeks. We don't know what the nature of any supplemental submission would be. So up to the point of authorization, this is an incredibly important step and I think probably the most important step. Again, you know, bringing up or addressing the points the Court brings up, that timing, we have no idea what that timing will be. And I think that recent experience is in other cases is that it has been very short timing between the

US Attorney recommendation and the defense's call to meet with the Capital Review Committee.

I don't know if the Court has other questions for me at this point, I am happy to address or if the Court wants to hear from the government and hopefully I'll get an opportunity --

THE COURT: I will give you an opportunity to respond, so why don't I hear from the government.

MR. KLEIN: Thank you, Your Honor.

THE COURT: Mr. Nestler.

MR. NESTLER: Yes, Your Honor. We do believe that the decision of whether the United States will seek the death penalty is a consequential decision. That is a decision of the United States Attorney General. And that is her decision alone to make. There are different components that go into whether she makes that decision, based on the Department of Justice's DOJ's internal protocols. But as both the internal protocols dictate and as the D.C. Circuit has recognized, those protocols provide no substantive rights to the defense and should not and cannot be used as a way to force the Department of Justice to take certain positions or to adhere to certain deadlines.

It is true that the Court can and ultimately probably should at some point set a deadline for the government to file a notice of intent or not file a notice of intent. That is the statutory factor or a statutory step in the process. But the

preliminary steps before that, which are the US Attorney's recommendation, the Capital Review Committee's review and ultimately the Attorney General's decision are not functions that either the defense or the Court should have any role in setting how they work or when they work. Those are purely internal to the Department of Justice. And, therefore, the Court lacks the authority to tell the Department of Justice how and when to go about making the decision the Attorney General will ultimately make.

THE COURT: Fair enough. But obviously I mean as you have started by saying, it is a consequential decision and I am sure the US Attorney and the Attorney General want to make sure they make an informed decision in doing so. And if it is not anything that is going to otherwise delay the case and we can talk about schedule more generally, but if it is not going to delay the case, why not take -- maybe not until March, but some additional time just to make sure that the decision is an informed decision? Because I understand the defense's position here is that a couple of months from indictment -- two and a half months from indictment is not a lot of time when you are getting up to speed. There is a ton of discovery and mitigation is a very labor intensive process. So it seems not only likely, but almost certainly the case that there will be important evidence or information that cannot be presented in that period of time. For example, I have no idea whether there

will be or not, but if there is a mental health exam, you won't have it and she will have to make a recommendation without that. And I am sure there are other things of that nature. So if it is not going to delay the case otherwise, why not take advantage of having some additional -- I am not talking about March, but some additional time to be able to have the information, so the decision can be made in a thoughtful and considered way given the ramifications.

MR. NESTLER: Two responses to that, Your Honor. One, is that is up to the United States Department of Justice. So there is no role for the Court in whether the US Department of Justice should afford more time. The second, to answer your Your Honor's question is, that has already happened. So the United States Attorney did provide an earlier deadline to the defense. The defense wrote us a thoughtful letter.

THE COURT: If I said, I want all of your discovery in 5 hours from now. And you said, Judge, that is unreasonable; and I said, okay, 6 hours. So now I have already given you an accommodation, you probably wouldn't say, well, Judge, okay, that is fine because you have given me an accommodation. The question is whether the accommodation is adequate.

MR. NESTLER: But Your Honor has authority to set deadlines for production of discovery for the filing statutory notice. Those are things that are involved in actual Court

proceedings. Any deadlines that we provide to the defense to give us information to help inform our US Attorney decision are not any role for the judiciary to have.

THE COURT: So to go back to my question that I asked Mr. Klein then, is there discovery outstanding and should I order that discovery be provided before whatever deadline you set? You can -- the US Attorney can set whatever deadline she wants. But I can set the discovery deadline and I can say that all discovery has to be provided before whatever that deadline is.

MR. NESTLER: There is discovery outstanding. We have already produced a large tranche of initial discovery. And I'm happy to get into what some of that discovery is and why we produced even before our first initial batch, within two weeks we produced the two critical video files in this case, as we indicated. So just a couple of weeks after the arrest, well before indictment we produced the body-worn camera file that the defendant was wearing when he committed the murders, which capture him on video and audio committing the murders. And we also produced the MPD body-worn camera where the defendant approached an officer shortly after committing the murders and said, I did it. So we produced those two video files within a few weeks.

THE COURT: Right. What about everything else? I don't know whether it is just somewhere in the discovery that

the defense hasn't found yet or whether it hasn't been provided but there are other statements that haven't been provided yet.

MR. NESTLER: So the other statements that the defendant made on scene are captured on body-worn camera. I believe those have already been produced. If they haven't, we'll double check. But we haven't -- this is the first I have heard from the defense that they hadn't seen it or had trouble locating it. We have had a very good relationship with the defense and we are happy to point them to anywhere in the discovery they need. They have an open invitation of us to go through the discovery with them, point them to things we think would be important for them to be aware of. But shortly after the defendant was brought outside of the museum, he is on video on MPD body-worn camera making additional statements that are captured in the indictment.

THE COURT: So any other discovery? What else is out there in discovery to be produced?

MR. NESTLER: There are additional witness statements and other files that we are still reviewing right now that were in the process of undergoing final review before they go out the door for discovery. So we are still producing discovery to the defense after the first initial large tranche.

THE COURT: And when can that be done by? Can it be done before the 20th of October?

MR. NESTLER: The Court's indulgence.

THE COURT: Okay.

(Pause.)

MR. NESTLER: We can commit to that, Your Honor. We do have to produce the FBI's file, which includes several FBI 302s and some additional MPD files that capture civilians. So that needs to be -- civilian statements or identification, so we need to give those more thorough review before they get produced. That is what we are going through right now for our discovery production.

THE COURT: So that is all that is left of discovery at this point?

MR. NESTLER: There are still other outstanding discovery, in terms of other search warrants that have been done, but that is going to be the critical mass of discovery that we are planning to get to the defense in the near term.

THE COURT: Are there search warrants of Mr. Rodriguez' personal media in any respect?

MR. NESTLER: We have already produced almost all of the search warrants of Mr. Rodriguez' social media and personal media that we have. Although, I -- it gets a little bit more complicated, Your Honor. The defendant was using some masking software and sometimes doing things on the internet not under his own name or not under his own account. So there will be additional search warrants and search warrant returns that need to be provided to the defense to try to capture some of the

things that he was -- that are more complicated to attribute to him than the things he was doing under his own name.

THE COURT: Anything else that is outstanding?

MR. NESTLER: One second, Your Honor.

THE COURT: Okay.

MR. NESTLER: We are not prepared today, Your Honor, to go through our entire discovery log. We do have to produce grand jury returns from subpoena returns and some grand jury transcripts and things of that nature. Those are the general topics that we have outstanding. But we would need to have some more time to gather what is outstanding in our discovery production. We are actively working on producing it through our discovery database.

THE COURT: And in your view, are there any limits on what defense will be able to provide to the Capital Review Committee or the Attorney General after this initial recommendation is made?

MR. NESTLER: No. But we don't believe that if they didn't -- there is no sort of preclusive, like if they didn't provide it to the US Attorney, they can't provide to the Review Committee or the Attorney General.

THE COURT: I didn't really mean preclusive. Just will there be a full and robust opportunity to say, yes, any additional evidence you want to submit? Our doors are open, we would be happy to consider it or --

MR. NESTLER: That is what the protocol allows for. As I indicated, the Attorney General could change the protocol tomorrow or decide not to abide by the protocol. And there really isn't a role for the Court or the defense if that is what the decision of the Department of Justice to do, because it is an internal Department of Justice policy.

I will say under the current protocol, the defense has an opportunity to present information to the US Attorney, to the Capital Review Committee, and then even after the Attorney General, if she does decide to authorize the seeking of death and file a notice of intent, there is also a procedure that we cited in pleading, Your Honor, for the defense to try to convince the Attorney General to withdraw that notice of intent. So those are three different procedural steps that are all things that the Department of Justice allows the defense under our own protocols to provide to the Department of Justice.

Then the Court has more of a role once we get into an actual trial. Of course, and the defense can present mitigation evidence to the jury during a penalty phase. So a deadline or an extension of a deadline to provide information to the US Attorney really is just -- this is the first step in what is going to be a lengthy process. And the defense will have plenty of opportunity to try to convince both the Department of Justice and then a jury, if ultimately we get to

that point, to impose a sentence other than death.

THE COURT: Okay. So I am sympathetic to your view that the Court's role here is limited with respect to what I can direct that the Department do with respect to its internal deadlines for considering things. But I do obviously have a responsibility with respect to management of the case discovery, making sure the defense gets the discovery in a reasonable time.

But also, you know, we are all human beings here too. And I think all of us want to make sure that this is a process that is a fair and reasonable process. The US Attorney herself and has gone and said that this will be a rigorous review that takes place. She understands it is a weighty decision. So I am still sort of coming back to the question of, even if it is entirely within the Attorney General of the US Attorney's discretion to decide when to schedule this, why not do it in a way that actually allows the US Attorney to do what she has represented to the public she intends to do, which is to engage in a rigorous review if it is not going to slow the case down by doing that?

MR. NESTLER: We do believe that the deadline that we provided to the defense right now of October 20th for a written submission is reasonable for the defense to provide mitigation evidence to the US Attorney before she makes her decision.

THE COURT: How can they provide, for example, a

psychiatric examination if they were to decide that was an appropriate thing to do?

MR. NESTLER: The defense has not indicated that they intend to pursue that. So if the defense told us they intended to pursue that and need an extra few weeks or a month in order to accomplish that, we would, of course, consider that. We have in good faith considered their other requests for additional time. All that we have heard so far is that they want six additional months. Meanwhile, we have told them since a few weeks after the case was charged by complaint, this was a potentially death eligible case. And the defense used that representation in order to ask Judge Boasberg to appoint learned counsel, which we think is a good idea.

THE COURT: Right.

MR. NESTLER: They do have learned counsel. They do have experienced counsel. So they likely should know which avenues would be likely to be fruitful on mitigation purposes and which ones would not.

And if they plan to pursue a mitigation avenue that they need more time and they can justify to us why and how that would happen, we will, of course, consider that request in good faith. But we are not willing to provide an open-ended extension at this time for the defense. Again, this is just the very first stage.

THE COURT: I understand that. But what about, you

know, picking some reasonable period of time that is -- somewhat longer than what you are asking for or somewhat -- or you directed or somewhat shorter than what the defense is asking for, but really is just reasonable under the circumstances. I mean, I think that is what our goal ought to be here is all behave in a reasonable fashion here. And the government is entitled to move the case along in a reasonable fashion. And the defense is entitled to have a reasonable opportunity to investigate and to make its views known in the case. And so why not pick a date that, you know, in December for example and say, okay, you know, we are going to accommodate that. We understand that you have got a lot of work to do. You don't even have all of the discovery yet. You need a chance to review that discovery. And you can pick a date in December, make your presentation then and we'll proceed from there.

MR. NESTLER: If the defense has other reasons why they think they need more time and that would be reasonable, we'll consider it in good faith. But that is a decision between us and the defense.

THE COURT: Well, fair enough. But I think they have indicated what they need to do. And I think it is not probably appropriate to delve too much into internal defense strategies in the same way it is not appropriate to delve too much into your strategies. And to say -- you know, if I were a defense

lawyer I would say, well, I want to do a private mental health investigation. If it doesn't go anywhere, that is going in the file drawer as protected work product. If it goes somewhere, then we'll do something that is more public that we can share in the nature -- I can understand why they don't want to share that. I don't know whether they are thinking that or not. But I would certainly think I have got to review the discovery before I can make a reasonable presentation. And there is a massive amount of discovery in the case.

And they may be learned counsel, but learned counsel are not superhuman that can be more in a day than the rest of us. So there are just some limits. And you keep coming back and say, Judge, it is none of your business and you can do that, but I still come back to the question of, is it reasonable under the circumstances?

MR. NESTLER: And with all due respect, Your Honor, the decision about what is reasonable is the US Attorney's decision and the Attorney General's decision and not in this situation the Court's decision and that is ultimately where we come back to. And we are following our internal protocols, which we are doing. But we don't have to because they are internal protocols and those internal protocols give the US Attorney the authority to decide what is reasonable. And this is the situation where we are right now where we have decided -- the US Attorney has decided this is what is

reasonable right now. And if there is something that changes from the defense's perspective, they know how to reach us. We talk to them frequently and we'll reassess, but that is where we are right now.

THE COURT: Anything else you want to add?

MR. NESTLER: No, Your Honor. Thank you.

THE COURT: Let's see, Mr. Klein.

MR. KLEIN: Thank you, Your Honor. And I just have I think three, I would hope for the Court's sake, are brief points. One is kind of an overarching, big picture point. I think what the Court is grappling with, which is what other courts have grappled with, which is there is the wisdom of what we are asking for versus this Court's authority for what we are asking for. And obviously courts have come down on both sides of that. And, you know, I think we appreciate that the Court -- I don't want to speak for the Court, but the Court seems to recognize that there is some wisdom to allowing us more time. And I think --

THE COURT: I think that is a fair statement.

MR. KLEIN: I appreciate it.

And I think we have set out why we think the Court has the authority, so I won't belabor that anymore.

A maybe more granular point is, you know, when we talk about the amount of discovery we have received and what may be outstanding -- and I think the government's argument

highlights this problem when we talk about our client's statements and the government says, well, there is this police body-worn camera from the scene. And so it appears that maybe even government counsel is not aware of what is out there because the complaint in paragraph 18 -- and the Court -- I encourage the Court to look at that paragraph of the complaint, references a post-Miranda interview by Metropolitan Police Department detectives and attributes further statements to that. So I don't -- we are pretty confident we don't have that. It doesn't sound like the government is disputing that. And I don't even know if government counsel is aware of that, but it is in the complaint.

The last point I might address is that the government talks about, well, there will be an opportunity down the road to seek to withdraw the notice of intent.

THE COURT: I don't think that -- I don't get to that point. The question is whether there will be other opportunities before you can get to notice of intent. I understand the burdens or the standards change when you are withdrawing a notice of intent. But up until there is a notice of intent, which still may be many, many months away, at this point there will be opportunities to make further presentations.

MR. KLEIN: Well, there's -- we go to the US Attorney. Then things go to the capital case section, Capital

Review Committee, then they go to Deputy Attorney General and the Attorney General. What -- in my experience, the lag in time is generally from the Capital Review Committee to the Attorney General's decision. And in that period, there is nothing in the protocol that says we can submit anymore information. So if we have a meeting with the US Attorney and we are told two weeks later, we have a meeting with the Capital Review Committee, obviously there is not a lot of time there.

While we are waiting after that, if we say, hey, we have new information, can we submit it to you guys? Frankly, I am not aware of anything in the protocol that says, no, we can't, but there is certainly nothing that says, yes, you can in the protocol. And, frankly, I am not really familiar with that. I am not thinking of a case. I am familiar with some of that happening and I think there was no response from the government to that. And it --

So it would be pretty out of the ordinary for that to happen, because there is just not a procedure for us to be able to do that. And because I think usually the delay is in that stage after it goes from the Capital Review Committee. We certainly wouldn't count on that being a time where we would be able to impact a decision, because at that point there is already a recommendation from the local US attorney and from the Capital Review Committee, which those are the most important, we would say, stages.

THE COURT: So what do you need, assuming I agree with the government with the basic proposition that it is the Attorney General that sets the schedule and it is none of my business to monkey with that? What do you need from me before that happens? So let's say they say, okay, it is October 20th, I think is the date they said and it is not moving. What do you need me to direct that they provide you with so you can be prepared for that in advance? What outstanding discovery -- what do you need that is within my authority -- do you need me to get them to produce?

MR. KLEIN: Can you give me a moment?

THE COURT: Yes.

(Pause.)

MR. KLEIN: All right. Thank you, Your Honor.

I think just thinking practically and realistically given that we are now just a few weeks away from our deadline with the government, if the Court determines that it does not have authority to move that, setting a discovery deadline is not -- probably not going to do us a lot. And I think I agree with Mr. Nestler that there has been good communication with us. So I think what we should do on our own is have a conversation in the next few days with government counsel about what we do have, don't have, when we will be getting more. And if need be, we can come back to the Court after that, understanding that we are running out of time. But, again, as

a practical matter, I don't know -- if we get something on October 10th, I don't know that it is going to matter for our ability to make use of it.

THE COURT: What I was really thinking of just -- if I don't have the authority to set the deadline for when the meeting occurs or presentation occurs, I can say at least any discovery should be produced a certain number of days in advance of whenever that occurs and leave it up to the parties to set what date they want or the government can say whatever date it wants for the proceeding. If there is discovery that you feel like you need to have before that meeting, I think that I do have the authority to say that that discovery can be provided, you know, at 10:00 tonight. It has to be provided sufficiently in advance of that meeting, whenever it is set for you to be able to make reasonable use of it. Whatever that discovery is, if it is anything that would matter to you for purposes of making those determinations.

MR. KLEIN: That is a very different analysis. So if I may have another moment, I think, Your Honor.

THE COURT: And also, you know, I am also happy to step off the bench, because I am all in favor of counsel conferring and resolving this amongst themselves. I am happy to kind of give you some guidance on what my thinking is. And then if you all -- you don't need to do it in my presence, you can do it later if you want and get back to me. But I am not

yet persuaded that I have the authority to direct that the government move the date for the presentation to the US Attorney.

Go ahead.

MR. KLEIN: Just so I make sure I understand what the Court is -- I don't want to say proposing but suggesting maybe a possibility is that Court would say, all discovery or something must be produced no fewer than 30 days prior to the defense submission?

THE COURT: That is what I was having in mind. I'm not sure all discovery, but any -- that is why I need your help. It has to be any discovery that would be material to whatever presentation you would want to make. And I'm not sure that requires, you know, every witness statement, maybe it does. I don't know. I have never made one of these presentations before, so I don't know exactly what goes into it. But anything that could be material to the presentation, I think you should have beforehand. And so it is within my authority to set a schedule for that. And I can direct the government do that. But I don't think that -- at least I am not convinced presently that I have the authority to direct that the US Attorney schedule the meeting for a particular date. I am not convinced that the presentation of mitigating information to the US Attorney is a critical stage of the litigation for Sixth Amendment purposes.

I suppose the government runs some risk that I am wrong about that, that it could someday form a basis of a portion of a collateral challenge. And the government can evaluate whether they think of that. But at least I am not personally convinced -- and for various reasons, I thought that Judge Paez decision was pretty convincing on this issue. And I think that given the fact that there is no judicial involvement, it is by definition non-adversarial. I don't think it circumscribes any trial rights. It doesn't directly effect any trial right. It obviously is a decision of profound significance, but it is an informal process. And it is one that is not mandated by any statute or regulation. And I think that the government is correct that the US Attorney's manual is not binding and something -- I can't order the government to comply with the US Attorney's manual, even though it does provide for a reasonable opportunity. And I think that, quite frankly, it would not reflect well on the United States to -- in a death penalty case to depart from the US Attorney manual. But that is not my decision. That is the government's decision about what to do.

I do think that the notice may present subsequent issues. And I don't want to express a view about what may need to happen before the notice issues at this point. But if we are just talking about a meeting with the US Attorney's Office at this point. So I am not convinced I have the authority to

dictate when that occurs, although I think that you correctly observed that. I think I don't see how it will result in any material delay in this case to push that date back. And I can see the benefits to everyone involved in doing it. But it's not my decision to schedule this. But it is my decision to make sure that discovery is provided in a prompt and meaningful fashion. If it is discovery that you need for that presentation, I think that does fall within my authority. But I would much rather have the parties sit down and put their heads together on this.

I think Mr. Nestler invited that if you have particular reasons why you need additional time that he and his office would be open to hearing from you about that. Perhaps he just needs to hear in greater detail exactly what it is that you feel like you need to get done before you can make a reasonable presentation to the US Attorney's Office that would be helpful to the US Attorney in having to make a very important recommendation.

MR. KLEIN: I appreciate that. And one thing I don't want to do is take up everybody's time if we say, let us go back and we are at a -- where the government might have a different view about whether the Court has authority to enter that order that is being contemplated and then we have to come back for another hearing. So maybe if we took a brief break for us to confer. And before we do that, could I ask, because

United States District Court judges talk about other US District Court judges. Is the case that the Court that is referring to, is that the *Crusius* case?

THE COURT: Let's see. It is the *Furrow* case is what I was talking.

MR. KLEIN: Which one?

THE COURT: *U.S. v. Furrow*, F-U-R-R-O-W, 100 F. Supp. 2d 1170.

MR. KLEIN: Right. Thank you.

THE COURT: I thought the analysis of the Sixth Amendment issue in that decision was convincing to me.

MR. KLEIN: So maybe -- I am going to look to Mr. Nestler and my cocounsel -- I think it makes sense if we have a few minutes.

THE COURT: Of course, you are welcome to do that. I am always in favor of the parties working together on these types of things. Just let me know when you want to come back.

MR. KLEIN: Thank you.

(Recess taken at 3:01 p.m.)

THE COURT: All right. Mr. Klein.

MR. KLEIN: Thank you, Your Honor. We have had time to speak amongst ourselves as defense counsel and speak with government counsel. And I think with government's permission, I can represent the government's view and then what we think is how we should proceed today.

But I think the government does not believe the Court has the authority to peg our submission to the government -- to a discovery deadline if it might effectively move the deadline from October 20th. And rather than continue to argue about that today, the government has agreed to provide us discovery on as expedited basis as they can. We will continue to work with them, as we have. Counsel have been working together very constructively. If based on what we receive there is something specific that we see that we think would be a basis for them to extend the deadline they have set, then we'll go back to government counsel with that.

THE COURT: Okay. If that is how you want to proceed, that is fine with me.

MR. KLEIN: I think that probably makes the most sense at this point.

THE COURT: And I just -- that is fine. And I just would encourage the parties to continue to work together cooperatively. This is the type of issue that ought not be a -- the type of issue that one draws lines in the sand over. It is not going to make any difference at all in terms of how quickly the case moves forward unless we are talking about pushing dates way out. And I just encourage you all to do your best to reach some accommodation and to make sure that the US Attorney has, not a complete submission, because nothing will be complete probably until the day of trial if we go to trial

on this issue, but as complete as possible at this stage in the process so that she can engage in the type of rigorous process that she has indicated she intends to do.

MR. KLEIN: Thank you, Your Honor.

THE COURT: Okay. Anything else from the government before we adjourn?

MR. NESTLER: No, Your Honor. Thank you.

THE COURT: All right. Thank you.

(Proceedings concluded at 3:28 p.m.)

C E R T I F I C A T E

I, SHERRY LINDSAY, Official Court Reporter, certify that the foregoing constitutes a true and correct transcript of the record of proceedings in the above-entitled matter.

Dated this 13th day of February, 2026.

Sherry Lindsay, RPR
Official Court Reporter

**MR. ABREU: [1]** 3/13
**MR. KLEIN: [36]** 3/10 3/20 8/4 8/19 9/13 10/7 11/22 13/12 13/23 14/2 14/5 14/8 15/4 15/7 15/19 16/10 17/20 19/6 20/4 21/8 22/9 34/8 34/20 35/24 37/11 37/14 38/18 39/5 41/19 42/6 42/9 42/12 42/18 42/21 43/14 44/4
**MR. NESTLER: [22]** 3/6 22/11 24/9 24/23 25/11 26/3 26/18 26/25 27/3 27/12 27/18 28/4 28/6 28/18 29/1 30/21 31/3 31/15 32/17 33/16 34/6 44/7
**THE COURT: [58]**
**THE COURTROOM DEPUTY: [1]** 3/2

**1**

**100 [1]** 42/7
**10:00 tonight [1]** 38/13
**10th [1]** 38/2
**1170 [1]** 42/8
**13th [1]** 45/11
**143 [1]** 7/14
**144 [1]** 7/14
**18 [1]** 35/5
**19106 [1]** 2/7

**2**

**20001 [2]** 1/17 2/11
**20004 [1]** 1/20
**2025 [1]** 1/5
**2026 [1]** 45/11
**2035 [1]** 14/15
**20530 [1]** 1/14
**20th [5]** 14/10 26/24 30/22 37/5 43/4
**224 [2]** 1/4 3/2
**24 [1]** 1/5
**25-224 [2]** 1/4 3/2
**2:02 [1]** 1/6
**2d [1]** 42/8
**2nd [1]** 17/24

**3**

**30 [1]** 39/8
**302s [1]** 27/5
**333 [1]** 2/10
**3:01 [1]** 42/19
**3:28 [1]** 44/9

**5**

**5.138 [1]** 1/14
**500 [1]** 1/20
**5398 [1]** 2/3
**545 [1]** 2/6

**6**

**600 [1]** 1/16
**601 [2]** 1/13 2/6
**625 [1]** 1/19
**6710 [1]** 2/11

**8**

**80303 [1]** 2/3

**A**

**ABA [2]** 20/7 20/13
**abide [1]** 29/3
**ability [1]** 38/3
**able [8]** 17/4 17/13 20/21 24/6 28/15 36/18 36/22 38/15
**about [48]**
**above [1]** 45/6
**above-entitled [1]** 45/6
**Abreu [3]** 2/5 3/12 19/16
**absent [1]** 8/17
**absolutely [3]** 4/1 16/16 20/4
**accept [2]** 7/23 8/1
**accepts [1]** 7/24
**accommodate [1]** 32/12
**accommodation [4]** 24/19 24/21 24/21 43/23
**accomplish [1]** 31/6
**account [1]** 27/23
**accurate [1]** 17/2
**Action [1]** 1/3
**actively [1]** 28/12
**actual [2]** 24/25 29/19
**actually [4]** 8/16 12/9 12/14 30/17
**add [1]** 34/5
**additional [12]** 12/14 23/17 24/5 24/6 26/14 26/18 27/5 27/24 28/24 31/8 31/9 41/12
**address [5]** 3/24 4/24 16/12 22/4 35/13
**addressing [1]** 21/22
**adequate [2]** 18/6 24/22
**adhere [1]** 22/21
**adjourn [1]** 44/6
**administration [1]** 6/17
**advance [3]** 37/8 38/8 38/14
**advantage [1]** 24/5
**adversarial [1]** 40/8
**affect [2]** 7/7 7/24
**affects [1]** 8/1
**afford [1]** 24/12
**after [13]** 12/4 12/10 17/8 25/16 25/21 26/12 26/22 28/16 29/9 31/10 36/9 36/20 37/24
**afternoon [5]** 3/6 3/9 3/10 3/13 3/14
**again [10]** 11/10 15/19 17/21 18/3 18/6 19/22 20/4 21/22 31/23 37/25
**against [1]** 16/18
**agree [6]** 4/1 7/1 8/19 15/20 37/1 37/19
**agreed [1]** 43/5
**ahead [1]** 39/4
**akin [1]** 10/17
**all [30]** 3/14 3/15 5/13 5/25 8/14 12/1 12/21 14/12 15/21 18/16 24/16 25/9 27/10 27/18 29/15 30/9 30/10 31/8 32/6 32/13 33/16 37/14 38/21 38/24 39/7 39/11 42/20 43/20 43/22 44/8
**allowing [1]** 34/17
**allows [3]** 29/1 29/15 30/17
**almost [2]** 23/23 27/18
**alone [1]** 22/14
**along [3]** 3/11 12/24 32/7
**already [7]** 14/8 24/13 24/18 25/12 26/5 27/18 36/23
**also [12]** 9/9 12/25 16/19 18/8 18/16 19/7 21/12 25/20 29/11 30/9 38/20 38/20
**although [5]** 7/18 12/23 14/19 27/20 41/1
**always [1]** 42/16
**am [33]** 3/22 8/7 9/20 11/16 12/7 12/7 12/11 13/1 13/6 14/14 18/25 19/11 22/4 23/11 24/3 24/5 30/2 30/14 36/11 36/13 36/14 36/14 38/20 38/21 38/22 38/25 39/20 39/23 40/1 40/4 40/25 42/12 42/16
**Amendment [7]** 6/13 6/15 10/2 10/14 11/15 39/25 42/11
**AMERICA [2]** 1/3 3/3
**American [1]** 18/9
**amongst [2]** 38/22 42/22
**amount [3]** 19/15 33/9 34/24
**analysis [5]** 8/21 10/23 14/12 38/18 42/10
**analyze [1]** 17/5
**Ann [1]** 1/18
**another [5]** 6/22 11/7 20/9 38/19 41/24
**answer [5]** 13/14 13/15 13/15 21/8 24/12
**any [21]** 5/6 13/5 13/16 14/9 18/4 21/19 23/4 25/1 25/3 26/16 27/17 28/14 28/23 38/6 39/11 39/12 40/9 40/10 40/12 41/2 43/20
**anybody [1]** 18/13
**anymore [2]** 34/22 36/5
**anyone's [1]** 6/3
**anything [8]** 14/3 23/14 28/3 34/5 36/11 38/16 39/17 44/5
**anywhere [2]** 26/9 33/2
**APPEARANCES [3]** 1/11 1/22 2/1
**appearing [1]** 3/7
**appears [1]** 35/3
**application [1]** 10/25
**appoint [1]** 31/12
**appreciate [7]** 13/12 13/13 16/10 19/6 34/15 34/20 41/19
**approach [2]** 3/4 12/17
**approached [1]** 25/21
**approaching [1]** 12/1
**appropriate [6]** 11/17 13/1 21/4 31/2 32/23 32/24
**are [100]**
**arguably [1]** 8/11
**argue [1]** 43/4
**argument [3]** 7/9 10/21 34/25
**arrest [2]** 17/8 25/16
**as [39]** 3/14 4/8 4/8 4/16 6/24 6/25 9/7 9/8 13/25 14/13 16/13 16/15 17/13 17/13 18/3 18/3 18/17 18/18 19/2 20/15 21/12 21/12 21/13 21/13 21/15 22/17 22/18 22/20 23/10 25/15 29/2 33/3 37/25 42/22 43/6 43/6 43/7 44/1 44/1
**aside [1]** 11/15
**ask [4]** 11/13 17/16 31/12 41/25
**asked [1]** 25/4

**A**

**asking [8]** 5/3 5/6 5/12 16/5 32/2 32/4 34/13 34/14
**assistance [3]** 6/16 6/20 7/13
**Association [1]** 18/9
**assume [2]** 4/25 15/1
**assuming [1]** 37/1
**attaches [1]** 10/3
**attorney [53]**
**Attorney's [10]** 9/21 10/1 20/1 23/1 30/15 33/17 40/13 40/15 40/24 41/16
**Attorneys [1]** 3/18
**attribute [1]** 28/1
**attributes [1]** 35/8
**audio [1]** 25/19
**AUSA [2]** 3/8 10/5
**authority [25]** 3/23 5/1 5/14 6/2 6/7 7/2 12/5 13/17 13/20 23/7 24/23 33/23 34/13 34/22 37/9 37/18 38/5 38/12 39/1 39/19 39/21 40/25 41/8 41/22 43/2
**authorization [3]** 4/17 9/5 21/20
**authorize [1]** 29/10
**authorized [1]** 10/20
**available [1]** 12/21
**Ave,NW [1]** 1/19
**avenue [3]** 1/16 2/10 31/19
**avenues [1]** 31/17
**aware [4]** 26/12 35/4 35/11 36/11
**away [3]** 16/5 35/21 37/16

**B**

**back [13]** 15/24 25/4 30/14 33/12 33/14 33/20 37/24 38/25 41/3 41/21 41/24 42/17 43/10
**backwards [2]** 12/1 13/25
**ball [1]** 11/9
**Bankruptcy [1]** 2/10
**Bar [1]** 18/9
**based [2]** 22/16 43/8
**basic [1]** 37/2
**basis [4]** 15/1 40/2 43/6 43/9
**batch [1]** 25/14
**be [91]**
**bear [1]** 16/6
**because [28]** 4/10 4/11 4/16 7/7 8/13 9/13 9/17 10/8 10/12 10/17 11/7 14/15 16/2 18/1 18/20 18/25 19/12 23/18 24/20 29/5 33/21 35/5 36/18 36/19 36/22 38/21 41/25 43/24
**becomes [1]** 10/13
**been [10]** 17/13 18/24 19/1 21/25 26/1 26/2 26/5 27/13 37/20 43/7
**before [34]** 1/9 3/24 4/4 4/20 8/12 8/22 10/3 10/5 13/9 14/24 17/19 18/7 20/19 20/25 21/1 21/2 23/1 25/6 25/9 25/14 25/17 26/20 26/24 27/7 30/24 33/8 35/18 37/4 38/11 39/16 40/23 41/15 41/25 44/6
**beforehand [1]** 39/18
**beginning [1]** 16/16
**behalf [3]** 3/7 3/11 13/8
**behave [1]** 32/6
**being [3]** 12/15 36/21 41/23
**beings [1]** 30/9
**belabor [1]** 34/22
**believe [5]** 22/11 26/5 28/18 30/21 43/1
**Benavides [1]** 14/16
**bench [1]** 38/21
**benefits [1]** 41/4
**best [1]** 43/23
**between [3]** 21/16 21/25 32/20
**beyond [1]** 20/14
**big [2]** 11/12 34/10
**bigger [1]** 16/3
**binding [4]** 8/9 8/11 9/12 40/14
**bit [2]** 15/11 27/20
**Boasberg [1]** 31/12
**body [5]** 25/17 25/20 26/4 26/14 35/3
**body-worn [5]** 25/17 25/20 26/4 26/14 35/3
**both [4]** 3/9 22/17 29/24 34/14
**Boulder [1]** 2/3
**bound [1]** 13/3
**breadth [1]** 4/18
**break [1]** 41/24
**brief [2]** 34/9 41/24
**bringing [1]** 21/22
**brings [1]** 21/23
**brought [1]** 26/13
**budget [1]** 18/25
**burdens [1]** 35/19
**business [2]** 33/13 37/4

**C**

**call [1]** 22/1
**called [1]** 21/17
**camera [5]** 25/17 25/20 26/4 26/14 35/3
**can [46]**
**can't [6]** 12/19 19/15 19/17 28/20 36/12 40/14
**cannot [2]** 22/20 23/24
**capital [17]** 11/22 11/23 15/13 20/25 21/1 21/14 21/18 22/2 23/2 28/15 29/9 35/25 35/25 36/3 36/7 36/20 36/24
**capture [3]** 25/19 27/5 27/25
**captured [2]** 26/4 26/15
**carrying [1]** 21/13
**case [53]**
**cases [11]** 7/4 9/24 10/8 18/23 19/12 19/13 19/15 19/18 19/19 19/24 21/25
**category [1]** 9/22
**central [1]** 10/11
**certain [4]** 10/6 22/21 22/21 38/7
**certainly [7]** 5/23 17/21 20/6 23/23 33/7 36/12 36/21
**certification [1]** 8/16
**certify [1]** 45/4
**challenge [1]** 40/3
**chambers [1]** 19/9
**chance [2]** 16/25 32/14
**change [4]** 14/15 19/9 29/2 35/19
**changes [1]** 34/1
**characterized [1]** 16/15
**charged [1]** 31/10
**charging [4]** 5/2 5/4 8/3 11/8
**check [1]** 26/6
**checked [1]** 17/10
**Chris [1]** 3/8
**Christopher [1]** 1/12
**Circle [1]** 2/3
**Circuit [1]** 22/18
**circumscribes [1]** 40/9
**circumstances [4]** 8/15 9/23 32/5 33/15
**cited [2]** 9/2 29/12
**civilian [1]** 27/6
**civilians [1]** 27/5
**CJA [2]** 18/25 19/4
**classes [1]** 10/6
**clear [5]** 5/5 5/9 10/9 15/25 20/15
**clearly [2]** 8/9 12/5
**client [3]** 13/8 18/13 20/19
**client's [2]** 17/8 35/1
**closer [1]** 8/3
**CO [1]** 2/3
**cocounsel [1]** 42/13
**coin [1]** 9/5
**collateral [1]** 40/3
**COLUMBIA [2]** 1/1 1/19
**come [8]** 9/25 12/4 33/14 33/20 34/14 37/24 41/23 42/17
**comes [1]** 4/4
**coming [5]** 15/12 17/7 19/7 30/14 33/12
**comments [1]** 13/13
**commit [1]** 27/3
**commitment [1]** 18/5
**committed [1]** 25/18
**Committee [17]** 11/22 11/23 15/14 19/3 21/1 21/2 21/14 21/18 22/2 28/16 28/21 29/9 36/1 36/3 36/8 36/20 36/24
**Committee's [1]** 23/2
**committing [2]** 25/19 25/21
**communication [1]** 37/20
**communications [1]** 18/12
**COMMUNITY [1]** 2/5
**competent [9]** 7/13 9/10 9/13 9/19 10/2 10/13 10/14 10/22 16/9
**complaint [5]** 17/9 31/10 35/5 35/6 35/12
**complete [3]** 43/24 43/25 44/1
**completely [1]** 9/6
**complicated [4]** 18/16 19/20 27/21 28/1
**comply [2]** 5/9 40/15
**components [1]** 22/15
**concern [2]** 14/20 14/22
**concerns [1]** 6/17
**concluded [1]** 44/9
**conduct [1]** 14/12

**C**

**conducting [2]** 20/17 20/18
**confer [1]** 41/25
**Conference [1]** 6/1
**conferring [1]** 38/22
**confident [1]** 35/9
**consequences [1]** 12/25
**consequential [5]** 4/7 4/9 4/11 22/13 23/11
**consider [5]** 20/9 28/25 31/6 31/21 32/19
**considered [3]** 20/21 24/8 31/7
**considering [1]** 30/5
**constitutes [1]** 45/5
**Constitution [1]** 2/10
**constitutionally [2]** 9/18 10/22
**constructively [1]** 43/8
**consuming [2]** 19/22 20/3
**contemplated [1]** 41/23
**contemplating [1]** 20/5
**context [4]** 6/18 7/18 7/22 17/5
**continue [3]** 43/4 43/6 43/17
**CONTINUED [2]** 1/22 2/1
**continuum [1]** 8/3
**contrary [1]** 7/5
**control [2]** 5/15 11/10
**conversation [1]** 37/22
**conversations [1]** 20/19
**convince [2]** 29/13 29/24
**convinced [4]** 39/21 39/23 40/5 40/25
**convincing [2]** 40/6 42/11
**cooperatively [1]** 43/18
**copy [2]** 5/17 17/25
**correct [2]** 40/13 45/5
**correctly [1]** 41/1
**couch [1]** 19/8
**could [7]** 4/10 19/12 19/25 29/2 39/17 40/2 41/25
**counsel [39]** 3/4 3/5 3/8 6/16 6/20 7/12 7/13 7/21 8/5 8/17 8/23 8/24 9/10 9/14 9/18 9/19 9/24 10/1 10/3 10/5 10/8 10/13 10/14 10/22 17/22 18/17 31/13 31/15 31/16 33/10 33/10 35/4 35/11 37/22 38/21 42/22 42/23 43/7 43/11
**count [1]** 36/21
**couple [2]** 23/19 25/16
**course [6]** 8/19 15/6 29/19 31/6 31/21 42/15
**court [78]**
**Court's [14]** 3/23 5/1 5/14 5/18 7/2 7/4 11/4 11/10 13/13 26/25 30/3 33/19 34/9 34/13
**courthouse [1]** 18/20
**courts [8]** 2/10 6/5 6/6 6/24 15/8 15/9 34/12 34/14
**create [1]** 6/16
**creates [1]** 9/13
**crimes [2]** 9/22 10/6
**criminal [3]** 1/3 3/2 20/14
**critical [12]** 6/23 6/25 7/1 7/7 7/12 8/25 9/5 10/23 13/8 25/15 27/14 39/24
**crucial [2]** 6/18 8/24
**Crusius [1]** 42/3
**current [1]** 29/7
**custody [1]** 3/12

**D**

**D.C [1]** 22/18
**database [1]** 28/13
**date [10]** 12/9 12/10 32/10 32/15 37/6 38/9 38/10 39/2 39/23 41/3
**Dated [1]** 45/11
**dates [1]** 43/22
**day [4]** 16/7 33/11 43/25 45/11
**days [6]** 17/25 17/25 17/25 37/22 38/7 39/8
**DC [5]** 1/5 1/14 1/17 1/20 2/11
**deadline [27]** 3/16 7/3 13/17 13/21 14/3 14/5 14/9 14/9 14/15 14/18 15/9 17/19 22/23 24/14 25/6 25/7 25/8 25/9 29/21 29/21 30/21 37/16 37/18 38/5 43/3 43/3 43/10
**deadlines [5]** 13/10 22/21 24/24 25/1 30/5
**deal [1]** 11/12
**death [18]** 4/2 4/7 4/14 4/16 5/8 5/10 5/21 9/17 13/6 15/16 15/18 18/9 20/15 22/12 29/11 30/1 31/11 40/18
**deauthorization [2]** 9/3 9/4
**deauthorize [1]** 9/8
**December [2]** 32/10 32/15
**decide [7]** 5/7 6/25 29/3 29/10 30/16 31/1 33/23
**decided [2]** 33/25 33/25
**decision [63]**
**decisions [5]** 5/3 5/4 5/7 7/5 13/8
**deeply [1]** 19/3
**defendant [20]** 1/7 1/18 2/2 4/14 7/12 7/19 7/19 7/20 7/22 7/25 8/1 8/2 10/12 10/13 10/21 25/18 25/20 26/4 26/13 27/21
**defendants [1]** 4/15
**DEFENDER [3]** 1/18 2/5 19/2
**defenders [2]** 18/22 19/3
**defense [41]** 3/19 7/3 8/5 8/23 8/24 9/18 9/19 20/14 22/19 23/4 24/15 24/15 25/1 26/1 26/7 26/9 26/22 27/15 27/25 28/15 29/4 29/7 29/12 29/15 29/19 29/23 30/7 30/22 30/23 31/3 31/4 31/11 31/23 32/3 32/8 32/17 32/20 32/23 32/25 39/9 42/22
**defense's [6]** 3/15 3/16 3/18 22/1 23/18 34/2
**definition [1]** 40/8
**delay [5]** 23/14 23/16 24/4 36/19 41/3
**delve [2]** 32/23 32/24
**depart [1]** 40/18
**Department [17]** 8/6 9/9 9/21 20/10 22/16 22/20 23/6 23/7 24/10 24/11 29/5 29/6 29/15 29/16 29/25 30/4 35/8
**deprived [1]** 10/22
**Deputy [1]** 36/1
**detail [1]** 41/14
**details [1]** 18/4
**detectives [1]** 35/8
**determination [1]** 8/14
**determinations [1]** 38/17
**determines [2]** 4/20 37/17
**determining [2]** 4/8 8/25
**develop [1]** 13/2
**devoting [1]** 19/15
**dialed [1]** 15/24
**dictate [2]** 22/18 41/1
**dictates [1]** 11/24
**did [4]** 6/6 20/2 24/14 25/22
**didn't [3]** 28/19 28/19 28/22
**dies [1]** 4/10
**difference [1]** 43/20
**different [6]** 4/16 9/16 22/15 29/14 38/18 41/22
**differently [1]** 10/8
**difficulties [1]** 18/17
**difficulty [1]** 17/15
**dime [1]** 19/1
**direct [5]** 30/4 37/7 39/1 39/19 39/21
**directed [1]** 32/3
**directing [1]** 17/18
**direction [1]** 12/18
**directly [1]** 40/9
**disagreed [1]** 6/5
**disagreement [1]** 6/6
**discovery [59]**
**discretion [1]** 30/16
**discretionary [1]** 7/11
**discussions [1]** 15/22
**dismissed [1]** 7/9
**disputing [1]** 35/10
**DISTRICT [8]** 1/1 1/1 1/10 1/19 2/10 9/3 42/1 42/2
**disturbing [1]** 19/3
**do [51]**
**docket [1]** 5/15
**document [1]** 9/12
**does [12]** 5/20 7/24 8/2 9/11 9/17 10/9 29/10 37/17 39/15 40/15 41/8 43/1
**doesn't [8]** 6/14 6/23 7/7 8/1 12/8 33/2 35/10 40/9
**doing [10]** 6/8 15/12 18/4 20/5 23/13 27/22 28/2 30/20 33/21 41/4
**DOJ [1]** 1/13
**DOJ's [3]** 5/19 5/20 22/17
**DOJ-USAO [1]** 1/13
**don't [52]**
**done [5]** 14/11 26/23 26/24 27/14 41/15
**door [1]** 26/21
**doors [1]** 28/24
**double [1]** 26/6
**down [4]** 30/19 34/14 35/14 41/9
**download [1]** 17/25
**drawer [1]** 33/3
**draws [1]** 43/19
**drifts [1]** 14/24
**drinking [1]** 18/23
**drive [1]** 13/4

**D**

**due [1]** 33/16
**during [1]** 29/20

**E**

**earlier [2]** 13/21 24/14
**early [1]** 15/2
**Eastern [1]** 9/3
**EDPA [1]** 2/5
**effect [1]** 40/10
**effective [1]** 6/20
**effectively [1]** 43/3
**eight [1]** 15/23
**either [3]** 16/5 21/3 23/4
**electronic [1]** 17/11
**ELIAS [2]** 1/6 3/3
**eligible [1]** 31/11
**Elizabeth [2]** 1/18 3/11
**else [7]** 12/6 13/10 25/24 26/16 28/3 34/5 44/5
**encourage [3]** 35/6 43/17 43/22
**end [1]** 16/6
**ended [1]** 31/22
**engage [5]** 19/25 20/16 21/4 30/18 44/2
**engages [2]** 10/10 10/15
**enough [2]** 23/10 32/21
**ensure [1]** 6/19
**enter [5]** 3/23 5/23 6/7 20/11 41/22
**entered [1]** 7/2
**entire [1]** 28/7
**entirely [1]** 30/15
**entitled [6]** 4/14 7/12 10/13 32/7 32/8 45/6
**Eric [2]** 2/2 3/10
**essential [1]** 16/16
**establishing [1]** 18/15
**evaluate [2]** 16/17 40/4
**even [21]** 6/5 6/6 7/9 7/10 9/6 10/4 10/4 14/5 14/17 16/23 16/25 17/11 17/15 20/19 25/14 29/9 30/14 32/13 35/4 35/11 40/15
**ever [2]** 10/9 14/24
**every [1]** 39/14
**everybody [1]** 17/10
**everybody's [1]** 41/20
**everyone [2]** 12/23 41/4
**everything [7]** 4/12 4/18 8/19 12/6 13/10 19/17 25/24
**evidence [6]** 3/17 13/3 23/24 28/24 29/20 30/24
**exactly [2]** 39/16 41/14
**exam [1]** 24/1
**examination [1]** 31/1
**example [3]** 23/25 30/25 32/11
**exigent [1]** 9/23
**expect [1]** 12/8
**expedited [1]** 43/6
**expedites [1]** 6/13
**expeditious [1]** 14/25
**experience [2]** 21/24 36/2
**experienced [1]** 31/16
**explicit [1]** 20/7
**explore [4]** 17/4 20/7 20/8 20/12
**express [1]** 40/22
**extend [2]** 10/10 43/10
**extends [1]** 11/4
**extension [2]** 29/21 31/23
**extra [1]** 31/5

**F**

**F-U-R-R-O-W [1]** 42/7
**face [2]** 18/12 18/12
**facing [2]** 4/14 19/7
**fact [3]** 14/17 20/23 40/7
**factor [4]** 20/9 20/10 20/21 22/25
**factors [1]** 16/19
**fair [8]** 6/17 7/8 11/17 13/1 23/10 30/11 32/21 34/19
**faith [3]** 31/7 31/22 32/19
**fall [3]** 12/6 13/18 41/8
**falls [2]** 5/14 13/11
**familiar [2]** 36/13 36/14
**family [1]** 18/13
**far [6]** 4/8 11/6 18/3 21/12 21/13 31/8
**fashion [3]** 32/6 32/8 41/7
**favor [2]** 38/21 42/16
**FBI [1]** 27/4
**FBI's [1]** 27/4
**featured [1]** 17/9
**February [1]** 45/11
**FEDERAL [3]** 1/18 2/5 18/22
**feel [3]** 16/8 38/11 41/15
**few [7]** 16/13 25/23 31/5 31/10 37/16 37/22 42/14
**fewer [1]** 39/8
**figure [3]** 17/15 17/23 18/1
**figuring [3]** 16/23 16/25 17/21
**file [6]** 22/23 22/24 25/17 27/4 29/11 33/3
**filed [5]** 11/9 12/3 12/8 13/21 15/24
**files [4]** 25/15 25/22 26/19 27/5
**filing [1]** 24/24
**final [2]** 20/23 26/20
**find [1]** 18/18
**fine [3]** 24/20 43/13 43/16
**fire [1]** 18/23
**firm [1]** 19/11
**first [9]** 13/12 15/2 20/24 21/9 25/14 26/6 26/22 29/22 31/24
**fixed [1]** 19/5
**focus [1]** 19/12
**focuses [1]** 18/11
**follow [1]** 4/3
**following [3]** 6/10 9/15 33/20
**follows [1]** 6/12
**footnote [1]** 15/11
**force [1]** 22/20
**foregoing [1]** 45/5
**form [1]** 40/2
**format [1]** 16/24
**forward [1]** 43/21
**found [1]** 26/1
**four [2]** 12/13 18/19
**frankly [4]** 19/10 36/10 36/13 40/17
**fraud [1]** 9/23
**frequently [1]** 34/3
**front [1]** 18/7
**fruit [1]** 16/6
**fruitful [1]** 31/17
**Frye [10]** 7/4 7/6 7/8 7/15 8/21 9/7 10/7 10/9 10/23 11/1
**full [1]** 28/23
**function [1]** 20/14
**functions [2]** 20/15 23/3
**fundamental [1]** 17/13
**Furrow [2]** 42/4 42/7
**further [4]** 12/10 16/7 35/8 35/22

**G**

**gather [1]** 28/11
**gathered [1]** 12/15
**general [21]** 8/12 8/13 8/16 11/20 12/12 19/4 21/3 21/14 22/14 23/8 23/12 28/9 28/16 28/21 29/2 29/10 29/13 30/15 36/1 36/2 37/3
**General's [3]** 23/3 33/18 36/4
**generally [3]** 16/12 23/15 36/3
**get [21]** 3/22 4/19 4/23 5/17 14/11 17/22 18/4 18/7 20/4 22/5 25/13 27/7 27/15 29/18 29/25 35/16 35/18 37/10 38/1 38/25 41/15
**gets [4]** 10/20 14/24 27/20 30/7
**getting [6]** 9/15 10/18 18/25 19/4 23/21 37/23
**give [10]** 6/16 13/1 15/22 16/5 22/7 25/2 27/7 33/22 37/11 38/23
**given [5]** 24/8 24/19 24/20 37/16 40/7
**giving [1]** 10/19
**go [17]** 7/23 11/6 20/20 22/15 23/8 25/4 26/10 26/20 28/7 33/2 35/24 35/25 36/1 39/4 41/20 43/10 43/25
**goal [1]** 32/5
**goes [4]** 20/25 33/3 36/20 39/16
**going [28]** 6/11 6/24 10/5 10/19 11/13 12/9 12/11 12/22 13/1 13/4 13/6 13/6 13/7 13/7 14/15 23/14 23/15 24/4 27/8 27/14 29/23 30/19 32/11 33/2 37/19 38/2 42/12 43/20
**gone [1]** 30/12
**good [11]** 3/6 3/9 3/10 3/13 3/14 26/8 31/7 31/13 31/21 32/19 37/20
**Google [1]** 17/12
**got [3]** 19/10 32/12 33/7
**governance [1]** 9/12
**government [60]**
**government's [8]** 7/6 9/6 14/20 16/18 34/25 40/19 42/23 42/24
**grand [3]** 10/6 28/8 28/8
**granular [1]** 34/23
**graphs [1]** 11/4
**grappled [1]** 34/12

**G**

**grappling [1]** 34/11
**greater [2]** 4/15 41/14
**groundwork [1]** 3/25
**guess [1]** 9/20
**guidance [1]** 38/23
**guide [1]** 6/1
**guideline [1]** 20/7
**guidelines [2]** 18/9 18/10
**guys [1]** 36/10

**H**

**had [8]** 13/9 15/15 15/22 16/25 19/13 26/7 26/8 42/21
**hadn't [1]** 26/7
**half [1]** 23/20
**hands [1]** 10/20
**happen [3]** 31/21 36/18 40/23
**happened [1]** 24/13
**happening [1]** 36/15
**happens [1]** 37/5
**happy [7]** 5/17 22/4 25/13 26/9 28/25 38/20 38/22
**hard [1]** 19/17
**has [44]** 4/16 4/25 5/9 5/23 6/2 6/2 6/13 6/14 7/22 9/18 10/21 11/8 11/8 11/8 13/16 13/21 14/10 15/19 16/24 18/9 19/18 21/11 21/25 22/3 22/18 24/13 24/23 25/9 29/8 29/18 30/12 30/17 31/3 32/17 33/25 34/22 37/20 38/13 39/12 41/22 43/2 43/5 43/24 44/3
**hasn't [2]** 26/1 26/1
**hasty [1]** 6/4
**have [115]**
**haven't [4]** 16/25 26/2 26/5 26/6
**having [4]** 12/21 24/5 39/10 41/17
**he [11]** 4/10 10/21 19/17 19/18 19/20 25/18 26/13 28/1 28/2 41/12 41/14
**heads [1]** 41/10
**health [3]** 19/25 24/1 33/1
**hear [3]** 22/5 22/8 41/14
**heard [2]** 26/7 31/8
**hearing [4]** 1/9 3/21 41/13 41/24
**held [1]** 7/6
**help [2]** 25/2 39/12
**helpful [2]** 16/8 41/17
**her [5]** 8/12 15/20 21/16 22/14 30/24
**here [18]** 3/15 4/12 7/20 7/20 8/2 8/5 11/11 14/20 14/22 17/22 18/19 18/21 18/22 23/19 30/3 30/9 32/6 32/6
**herself [1]** 30/11
**hey [2]** 10/19 36/9
**highlights [2]** 17/14 35/1
**Hill [1]** 8/22
**him [3]** 19/18 25/19 28/2
**his [7]** 7/21 17/8 19/19 27/23 27/23 28/2 41/12
**Honor [24]** 3/6 3/10 3/13 3/20 3/21 8/4 19/7 22/9 22/11 24/9 24/23 27/3 27/21 28/4 28/6 29/12 33/16 34/6 34/8 37/14 38/19 42/21 44/4 44/7
**Honor's [1]** 24/13
**HONORABLE [1]** 1/9
**hope [1]** 34/9
**hopefully [2]** 19/4 22/5
**hose [1]** 18/23
**hours [2]** 24/17 24/18
**how [17]** 4/8 4/12 4/18 4/19 4/20 4/22 8/13 17/7 23/5 23/7 30/25 31/20 34/2 41/2 42/25 43/12 43/20
**human [1]** 30/9
**hypothetical [1]** 11/5

**I**

**I'll [1]** 22/5
**I'm [5]** 10/1 11/19 25/13 39/10 39/13
**idea [3]** 21/23 23/25 31/13
**identification [1]** 27/6
**imagine [1]** 12/19
**impact [7]** 4/10 4/12 4/17 4/21 5/19 12/22 36/22
**implications [1]** 6/14
**importance [3]** 7/16 18/11 18/14
**important [18]** 3/25 4/25 5/5 9/9 10/12 11/2 11/3 17/8 21/10 21/11 21/11 21/12 21/21 21/22 23/24 26/12 36/25 41/18
**impose [1]** 30/1
**inadvertently [1]** 6/15
**includes [2]** 20/17 27/4
**including [2]** 4/19 12/3
**incredibly [2]** 21/10 21/21
**indeed [1]** 7/11
**Indiana [1]** 1/19
**indicated [6]** 15/17 25/16 29/2 31/3 32/22 44/3
**indictment [9]** 10/4 11/9 15/13 16/15 17/3 23/19 23/20 25/17 26/15
**indulgence [1]** 26/25
**ineffective [1]** 6/16
**infinity [1]** 14/9
**inform [1]** 25/2
**informal [1]** 40/11
**information [13]** 7/21 12/15 12/21 16/20 18/14 23/24 24/7 25/2 29/8 29/21 36/6 36/10 39/24
**informed [3]** 7/22 23/13 23/18
**initial [8]** 4/6 4/21 15/25 18/8 25/12 25/14 26/22 28/16
**initiated [1]** 5/24
**input [3]** 8/17 8/23 10/18
**instead [1]** 12/1
**intend [1]** 31/4
**intended [1]** 31/4
**intends [3]** 5/9 30/18 44/3
**intensive [1]** 23/22
**intent [11]** 12/3 12/8 13/17 22/24 22/24 29/11 29/14 35/15 35/18 35/20 35/21
**interest [1]** 6/3
**interesting [1]** 13/23
**interfere [4]** 5/3 5/6 5/12 5/20
**internal [10]** 9/12 22/17 22/17 23/6 29/6 30/4 32/23 33/20 33/22 33/22
**internationally [1]** 19/19
**internet [2]** 17/12 27/22
**interview [1]** 35/7
**interviews [1]** 18/13
**investigate [1]** 32/9
**investigation [7]** 16/1 18/3 18/6 19/20 20/17 20/18 33/2
**invitation [1]** 26/10
**invited [1]** 41/11
**involved [2]** 24/25 41/4
**involvement [2]** 7/10 40/8
**is [309]**
**isn't [3]** 14/23 21/7 29/4
**issue [11]** 3/22 5/1 6/16 6/22 13/25 15/2 40/6 42/11 43/18 43/19 44/1
**issues [5]** 11/14 16/5 19/21 40/22 40/23
**it [151]**
**it's [2]** 15/10 41/4
**its [12]** 5/2 5/3 5/15 6/9 6/12 11/8 11/9 11/10 16/14 19/8 30/4 32/9
**itself [2]** 11/4 14/21

**J**

**Jamieson [2]** 5/16 5/22
**Jeff [1]** 3/6
**Jeffrey [1]** 1/15
**JOHNSON [1]** 2/2
**JUDGE [6]** 1/10 24/17 24/20 31/12 33/13 40/6
**judges [2]** 42/1 42/2
**judicial [2]** 6/1 40/7
**judiciary [2]** 6/1 25/3
**jury [7]** 4/22 10/6 18/7 28/8 28/8 29/20 29/25
**just [36]** 8/20 9/4 9/12 11/16 12/1 12/18 14/22 15/2 16/14 16/17 17/14 17/24 18/13 19/21 20/14 20/24 23/17 25/16 25/25 28/22 29/22 31/23 32/4 33/12 34/8 36/18 37/15 37/16 38/4 39/5 40/24 41/14 42/17 43/16 43/16 43/22
**justice [17]** 5/10 6/17 8/6 9/9 9/21 20/10 20/14 22/20 23/6 23/7 24/10 24/12 29/5 29/6 29/15 29/17 29/25
**Justice's [1]** 22/16
**justify [1]** 31/20

**K**

**keep [1]** 33/12
**Kentucky [1]** 8/21
**kind [8]** 3/24 6/7 10/15 11/2 11/11 15/9 34/10 38/23
**Klein [6]** 2/2 2/2 3/10 25/5 34/7 42/20
**know [41]** 6/9 10/25 11/7 12/22 13/11 14/13 14/17 15/10 15/22 16/3 17/6 17/6 17/7 17/12 18/6 19/14 20/1 21/15 21/19 21/22 22/3 25/25

**K**

**know... [19]** 30/9 31/16 32/1 32/10 32/11 32/25 33/6 34/2 34/15 34/23 35/11 38/1 38/2 38/13 38/20 39/14 39/15 39/16 42/17
**knowing [1]** 7/22
**knowledge [1]** 17/9
**known [1]** 32/9

**L**

**labels [1]** 10/24
**labor [1]** 23/22
**lacks [1]** 23/7
**Lafler [3]** 7/5 7/6 8/21
**lag [1]** 36/2
**large [2]** 25/12 26/22
**last [1]** 35/13
**later [2]** 36/7 38/25
**law [1]** 19/10
**lawyer [2]** 19/17 33/1
**lawyers [3]** 18/19 19/4 20/16
**lay [1]** 3/24
**leads [1]** 6/22
**learn [1]** 20/25
**learned [4]** 31/13 31/15 33/10 33/10
**least [5]** 8/8 19/24 38/6 39/20 40/4
**leave [1]** 38/8
**left [2]** 19/16 27/10
**legal [3]** 3/22 13/14 20/18
**legally [2]** 8/9 13/15
**lengthy [1]** 29/23
**let [7]** 4/24 13/12 14/20 15/4 16/10 41/20 42/17
**let's [3]** 34/7 37/5 42/4
**letter [1]** 24/15
**life [4]** 4/5 9/17 20/11 20/12
**light [1]** 8/14
**like [9]** 13/3 16/8 17/8 17/24 19/15 28/19 35/10 38/11 41/15
**likely [3]** 23/23 31/16 31/17
**limited [1]** 30/3
**limits [2]** 28/14 33/12
**Lindsay [3]** 2/9 45/4 45/13
**line [4]** 4/5 10/7 15/8 15/10
**lines [1]** 43/19
**litigated [1]** 4/20
**litigation [1]** 39/25
**little [1]** 27/20
**lives [1]** 4/10
**LLP [1]** 1/16
**local [1]** 36/23
**locate [1]** 17/14
**locating [1]** 26/8
**Lockhart [1]** 8/22
**log [2]** 17/1 28/7
**logic [2]** 10/7 11/3
**longer [2]** 16/3 32/2
**look [4]** 13/5 19/8 35/6 42/12
**looking [3]** 10/24 10/24 11/25
**looks [1]** 5/16
**lot [11]** 5/2 11/1 12/11 16/23 17/3 17/11 21/13 23/20 32/12 36/8 37/19

**M**

**made [9]** 4/8 5/9 5/12 11/8 11/8 24/7 26/4 28/17 39/15
**make [35]** 6/4 7/22 8/14 8/16 9/25 12/11 12/13 12/20 12/24 13/8 16/1 16/9 17/25 20/22 21/5 22/15 23/9 23/12 23/13 23/17 24/2 30/10 32/9 32/15 33/8 35/22 38/3 38/15 39/5 39/13 41/6 41/15 41/17 43/20 43/23
**makes [7]** 5/7 8/12 11/20 22/16 30/24 42/13 43/14
**making [6]** 14/22 14/24 23/8 26/14 30/7 38/17
**management [1]** 30/6
**mandated [1]** 40/12
**Manhattan [1]** 2/3
**manner [1]** 11/18
**manual [6]** 5/10 9/22 10/4 40/13 40/15 40/18
**many [3]** 19/24 35/21 35/21
**March [2]** 23/16 24/6
**masking [1]** 27/21
**mass [1]** 27/14
**Massachusetts [1]** 1/16
**massive [1]** 33/9
**material [3]** 39/12 39/17 41/3
**math [1]** 15/12
**matter [7]** 9/11 14/14 21/15 38/1 38/2 38/16 45/6
**mattered [1]** 14/18
**matters [5]** 4/19 4/19 4/20 4/21 5/19
**may [14]** 5/19 6/15 8/15 13/10 14/20 16/5 17/22 21/5 33/10 34/25 35/21 38/19 40/21 40/22
**maybe [12]** 8/4 13/23 16/11 19/8 21/9 23/16 34/23 35/3 39/6 39/14 41/24 42/12
**McGill [1]** 6/25
**me [20]** 3/7 4/24 12/21 13/12 15/17 16/10 16/11 17/17 17/18 19/22 22/3 24/20 37/4 37/7 37/9 37/11 38/25 42/11 42/17 43/13
**mean [6]** 11/14 17/20 21/18 23/10 28/22 32/5
**meaningful [1]** 41/6
**means [1]** 19/14
**Meanwhile [1]** 31/9
**media [4]** 17/3 27/17 27/19 27/20
**meet [3]** 10/5 21/17 22/1
**meeting [8]** 21/16 36/6 36/7 38/6 38/11 38/14 39/22 40/24
**member [2]** 19/2 19/11
**members [1]** 18/13
**mental [3]** 19/25 24/1 33/1
**Metropolitan [1]** 35/7
**might [13]** 10/8 12/6 12/14 12/15 16/7 17/16 17/23 18/14 21/17 21/18 35/13 41/21 43/3
**mind [1]** 39/10
**mine [1]** 16/19
**minutes [1]** 42/14
**Miranda [1]** 35/7
**miss [1]** 21/5
**mitigating [6]** 3/17 7/21 13/2 16/20 18/14 39/23
**mitigation [10]** 16/1 18/3 18/6 18/11 19/20 23/22 29/20 30/23 31/17 31/19
**moment [3]** 11/15 37/11 38/19
**monkey [1]** 37/4
**month [2]** 16/16 31/5
**months [12]** 12/13 15/13 15/16 15/16 15/17 15/23 15/25 18/24 23/19 23/20 31/9 35/21
**more [18]** 4/4 15/13 17/7 20/25 23/15 24/12 27/7 27/20 28/1 28/11 29/18 31/20 32/18 33/4 33/11 34/18 34/23 37/23
**MOSS [1]** 1/9
**most [7]** 4/7 4/25 11/2 11/3 21/21 36/24 43/14
**motion [4]** 1/9 3/15 3/18 15/24
**motions [1]** 4/22
**move [4]** 32/7 37/18 39/2 43/3
**moves [2]** 12/24 43/21
**moving [1]** 37/6
**MPD [3]** 25/20 26/14 27/5
**Mr [8]** 3/11 3/12 22/10 25/5 34/7 37/20 41/11 42/20
**Mr. [7]** 4/10 6/20 19/16 20/11 27/17 27/19 42/13
**Mr. Abreu [1]** 19/16
**Mr. Nestler [1]** 42/13
**Mr. Rodriguez [3]** 4/10 6/20 20/11
**Mr. Rodriguez' [2]** 27/17 27/19
**Ms. [1]** 18/21
**Ms. Shrewsbury [1]** 18/21
**much [6]** 7/8 16/3 17/7 32/23 32/24 41/9
**Mullin [2]** 1/18 3/11
**multi [1]** 18/20
**multi-week [1]** 18/20
**multiple [1]** 18/12
**murders [3]** 25/18 25/19 25/21
**museum [1]** 26/13
**must [2]** 4/3 39/8
**my [19]** 11/16 12/5 12/16 12/17 12/24 13/4 19/10 25/4 36/2 37/3 37/9 38/23 38/24 39/18 40/19 41/5 41/5 41/8 42/13

**N**

**name [3]** 3/5 27/23 28/2
**nature [5]** 19/24 21/19 24/3 28/9 33/5
**near [2]** 20/12 27/15
**near-life [1]** 20/12
**necessarily [2]** 11/24 19/14
**necessary [1]** 20/18
**need [32]** 6/23 16/8 17/4 17/5 17/17 17/21 18/21 19/18 19/25 20/21 26/10 27/7 27/24 28/10 31/5 31/20 32/14 32/18 32/22 37/1 37/4 37/7 37/9

**N**


**need... [9]** 37/9 37/24 38/11 38/24 39/11 40/22 41/7 41/12 41/15
**needed [1]** 8/11
**needlessly [1]** 6/13
**needs [4]** 5/17 19/20 27/6 41/14
**negotiation [2]** 10/17 10/17
**negotiations [5]** 7/9 10/11 10/11 10/15 21/4
**Nestler [6]** 1/15 3/7 22/10 37/20 41/11 42/13
**never [1]** 39/15
**Nevertheless [1]** 7/1
**new [4]** 9/3 19/12 19/13 36/10
**next [3]** 1/22 12/4 37/22
**no [18]** 1/4 4/4 7/10 12/22 14/2 14/11 21/23 22/19 23/25 24/11 28/18 28/19 34/6 36/11 36/15 39/8 40/7 44/7
**non [1]** 40/8
**non-adversarial [1]** 40/8
**none [2]** 33/13 37/3
**not [95]**
**nothing [5]** 10/20 14/16 36/5 36/12 43/24
**notice [15]** 12/3 12/8 13/17 20/24 22/24 22/24 24/25 29/11 29/13 35/15 35/18 35/20 35/20 40/21 40/23
**now [16]** 12/11 14/2 14/10 14/16 16/21 18/23 18/24 24/17 24/18 26/19 27/8 30/22 33/24 34/1 34/4 37/16
**number [2]** 3/2 38/7
**NW [3]** 1/13 1/16 2/10


**O**


**obligation [4]** 5/23 20/6 20/8 20/16
**observed [1]** 41/2
**obvious [1]** 3/22
**obviously [8]** 4/9 7/20 20/3 23/10 30/5 34/14 36/8 40/10
**occurred [1]** 19/21
**occurs [4]** 38/6 38/6 38/8 41/1
**October [6]** 14/10 26/24 30/22 37/5 38/2 43/4
**October 10th [1]** 38/2
**October 20th [4]** 14/10 30/22 37/5 43/4
**off [2]** 11/14 38/21
**offense [1]** 8/15
**offer [3]** 9/7 9/7 10/10
**office [7]** 2/5 3/18 10/1 20/1 40/24 41/13 41/16
**officer [1]** 25/21
**Official [3]** 2/9 45/4 45/14
**often [1]** 6/7
**okay [10]** 14/1 24/18 24/20 27/1 28/5 30/2 32/11 37/5 43/12 44/5
**once [1]** 29/18
**one [20]** 11/24 13/14 13/15 13/21 13/24 16/13 16/18 17/16 18/12 18/12 18/20 19/21 24/10 28/4 34/10 39/15 40/11 41/19 42/6 43/19
**ones [1]** 31/18
**only [2]** 12/5 23/23
**open [4]** 26/10 28/24 31/22 41/13
**open-ended [1]** 31/22
**opportunities [2]** 35/18 35/22
**opportunity [14]** 9/25 10/19 13/2 13/9 16/17 21/3 22/6 22/7 28/23 29/8 29/24 32/9 35/14 40/16
**order [15]** 3/16 3/23 5/1 5/16 5/18 6/7 6/10 7/2 16/9 17/18 25/6 31/5 31/12 40/14 41/23
**ordered [2]** 15/8 15/9
**orderly [1]** 14/25
**orders [1]** 5/24
**ordinary [1]** 36/17
**other [22]** 4/15 6/24 9/4 12/18 15/8 19/18 19/19 21/25 22/3 24/3 26/2 26/3 26/16 26/19 27/12 27/13 30/1 31/7 32/17 34/11 35/17 42/1
**otherwise [2]** 23/14 24/4
**ought [3]** 12/2 32/5 43/18
**our [27]** 10/20 15/12 15/25 16/21 17/8 17/9 17/10 18/13 19/3 19/4 20/19 20/20 25/2 25/14 27/8 28/7 28/11 28/13 28/24 29/16 32/5 33/20 35/1 37/16 37/21 38/2 43/2
**ourselves [2]** 18/18 42/22
**out [17]** 3/24 5/10 5/11 16/6 16/25 17/15 17/21 17/23 18/2 18/18 26/16 26/20 34/21 35/4 36/17 37/25 43/22
**outline [1]** 16/8
**outset [1]** 14/22
**outside [1]** 26/13
**outstanding [8]** 25/5 25/11 27/12 28/3 28/10 28/11 34/25 37/8
**over [2]** 21/7 43/19
**overarching [1]** 34/10
**own [6]** 6/12 27/23 27/23 28/2 29/16 37/21


**P**


**p.m [3]** 1/6 42/19 44/9
**PA [1]** 2/7
**pace [1]** 12/25
**Padilla [1]** 8/21
**Paez [1]** 40/6
**PAGE [1]** 1/22
**pages [1]** 7/14
**paid [3]** 18/25 19/1 19/4
**paragraph [2]** 35/5 35/6
**part [4]** 13/14 14/19 14/21 15/1
**participant [2]** 7/19 7/20
**particular [5]** 9/16 9/22 12/9 39/22 41/12
**parties [5]** 4/11 38/8 41/9 42/16 43/17
**partner [1]** 19/11
**Pause [2]** 27/2 37/13
**peg [1]** 43/2
**penalty [13]** 4/2 4/7 5/8 5/10 5/21 13/6 15/16 15/18 18/9 20/15 22/13 29/20 40/18
**Perhaps [1]** 41/13
**period [3]** 23/25 32/1 36/4
**permission [1]** 42/23
**person [1]** 18/12
**personal [2]** 27/17 27/19
**personally [1]** 40/5
**perspective [1]** 34/2
**persuaded [1]** 39/1
**phase [1]** 29/20
**Philadelphia [1]** 2/7
**pick [2]** 32/10 32/14
**picking [1]** 32/1
**picture [1]** 34/10
**Pirro [1]** 4/1
**place [4]** 12/7 13/11 13/18 30/13
**Plaintiff [2]** 1/4 1/12
**plan [2]** 20/12 31/19
**planning [1]** 27/15
**plea [11]** 7/9 7/18 7/22 7/23 7/24 8/1 9/7 10/10 10/10 20/11 21/4
**pleading [1]** 29/12
**pleas [1]** 11/1
**please [1]** 3/4
**plenty [1]** 29/24
**PLLC [1]** 2/2
**podium [1]** 3/4
**point [20]** 7/14 10/3 12/11 14/6 21/20 22/4 22/23 26/9 26/11 27/11 30/1 34/10 34/23 35/13 35/17 35/22 36/22 40/23 40/25 43/15
**pointed [1]** 18/18
**points [3]** 8/5 21/23 34/10
**police [2]** 35/2 35/7
**policy [2]** 6/2 29/6
**portion [1]** 40/3
**position [3]** 7/6 13/7 23/18
**positions [1]** 22/21
**possibility [1]** 39/7
**possible [3]** 8/15 19/7 44/1
**post [2]** 16/15 35/7
**post-indictment [1]** 16/15
**post-Miranda [1]** 35/7
**posts [1]** 17/3
**potential [3]** 13/5 15/16 16/20
**potentially [3]** 4/5 19/22 31/11
**power [1]** 5/23
**practical [7]** 10/25 13/15 13/19 13/25 14/14 21/15 38/1
**practically [1]** 37/15
**pre [1]** 20/24
**pre-notice [1]** 20/24
**preclusive [2]** 28/19 28/22
**predated [1]** 7/4
**preindictment [1]** 9/25
**preliminary [1]** 23/1
**prepared [2]** 28/6 37/8
**presence [1]** 38/24
**present [4]** 3/12 29/8 29/19 40/21
**presentation [13]** 3/17 9/25 16/9 17/19 32/15 33/8 38/6 39/2 39/13 39/17 39/23 41/8

**P**

**presentation... [1]** 41/16
**presentations [2]** 35/23 39/16
**presented [1]** 23/24
**presently [1]** 39/21
**presents [1]** 7/21
**pressure [1]** 14/11
**pretrial [1]** 5/19
**pretty [3]** 35/9 36/17 40/6
**prior [1]** 39/8
**private [3]** 19/12 19/13 33/1
**probably [10]** 4/7 4/24 11/5 21/21 22/22 24/19 32/22 37/19 43/14 43/25
**problem [1]** 35/1
**procedural [3]** 4/15 21/11 29/14
**procedurally [1]** 21/12
**procedure [3]** 6/12 29/11 36/18
**proceed [5]** 8/13 14/25 32/15 42/25 43/13
**proceeding [1]** 38/10
**proceedings [6]** 4/21 12/10 18/10 25/1 44/9 45/6
**proceeds [4]** 4/9 4/12 4/18 4/22
**process [25]** 4/3 5/11 5/13 7/11 8/8 10/3 10/16 15/3 15/20 15/21 16/3 16/23 20/25 21/6 21/7 21/9 22/25 23/22 26/20 29/23 30/10 30/11 40/11 44/2 44/2
**produce [3]** 27/4 28/7 37/10
**produced [14]** 16/24 17/2 25/12 25/14 25/15 25/17 25/20 25/22 26/5 26/17 27/8 27/18 38/7 39/8
**producing [2]** 26/21 28/12
**product [1]** 33/3
**production [3]** 24/24 27/9 28/12
**professional [1]** 19/25
**profound [1]** 40/10
**prompt [1]** 41/6
**proposed [2]** 15/7 15/23
**proposing [1]** 39/6
**proposition [1]** 37/2
**protected [1]** 33/3
**protections [1]** 4/15
**protocol [15]** 5/10 5/11 9/9 9/15 10/16 16/19 20/10 21/12 29/1 29/2 29/3 29/7 36/5 36/11 36/13
**protocols [7]** 22/17 22/17 22/18 29/16 33/20 33/22 33/22
**provide [15]** 9/24 22/19 24/14 25/1 28/15 28/20 28/20 29/16 29/21 30/23 30/25 31/22 37/7 40/16 43/5
**provided [10]** 17/18 25/6 25/9 26/1 26/2 27/25 30/22 38/13 38/13 41/6
**psychiatric [1]** 31/1
**public [4]** 1/18 18/22 30/18 33/4
**published [1]** 5/16
**purely [1]** 23/5
**purposes [3]** 31/17 38/17 39/25
**pursue [8]** 4/2 4/6 5/8 16/6 16/7 31/4 31/5 31/19
**purview [1]** 9/6
**push [1]** 41/3
**pushing [2]** 15/1 43/22
**put [5]** 13/6 16/4 16/11 19/23 41/9
**puts [1]** 11/9
**putting [1]** 11/15

**Q**

**question [14]** 4/25 11/15 11/19 12/17 13/13 13/14 13/19 13/23 24/13 24/21 25/4 30/14 33/14 35/17
**questions [2]** 11/16 22/3
**quibbles [1]** 15/11
**quickly [1]** 43/21
**quite [1]** 40/16
**quotes [1]** 6/9

**R**

**ramifications [1]** 24/8
**RANDOLPH [1]** 1/9
**rather [3]** 16/12 41/9 43/4
**reach [3]** 6/23 34/2 43/23
**realistically [1]** 37/15
**really [21]** 5/18 5/25 6/3 6/18 7/15 8/24 10/11 10/16 10/23 10/24 10/25 11/10 12/19 18/11 20/13 28/22 29/4 29/22 32/4 36/13 38/4
**reason [3]** 13/3 13/16 15/1
**reasonable [20]** 12/25 14/23 15/8 30/8 30/11 30/23 32/1 32/4 32/6 32/7 32/8 32/18 33/8 33/15 33/17 33/23 34/1 38/15 40/16 41/16
**reasonably [1]** 14/25
**reasons [3]** 32/17 40/5 41/12
**reassess [1]** 34/3
**receive [1]** 43/8
**received [4]** 16/14 16/22 17/24 34/24
**receives [1]** 6/20
**recent [2]** 6/10 21/24
**Recess [1]** 42/19
**recognize [4]** 6/5 6/11 12/25 34/17
**recognized [4]** 6/2 6/8 9/4 22/18
**recognizes [2]** 9/1 9/10
**recommendation [11]** 11/20 12/12 21/6 21/10 21/17 22/1 23/2 24/2 28/17 36/23 41/18
**record [2]** 3/5 45/6
**references [1]** 35/7
**referring [1]** 42/3
**reflect [1]** 40/17
**regarding [1]** 6/17
**regulation [2]** 8/10 40/12
**related [1]** 7/14
**relationship [1]** 26/8
**relationships [1]** 18/15
**relies [1]** 17/3
**Reporter [4]** 2/9 2/9 45/4 45/14
**represent [1]** 42/24
**representation [2]** 20/22 31/12
**represented [1]** 30/18
**request [1]** 31/21
**requesting [2]** 3/23 5/1
**requests [1]** 31/7
**required [2]** 8/12 8/13
**requires [1]** 39/14
**requiring [1]** 19/18
**research [2]** 13/2 20/18
**resolving [1]** 38/22
**respect [5]** 27/17 30/3 30/4 30/6 33/16
**respond [1]** 22/8
**response [4]** 5/2 6/9 16/14 36/15
**responses [1]** 24/9
**responsibility [4]** 11/17 12/5 12/24 30/6
**rest [1]** 33/11
**result [1]** 41/2
**results [1]** 20/2
**returns [3]** 27/24 28/8 28/8
**review [24]** 11/22 11/23 15/13 21/1 21/2 21/14 21/18 22/2 23/2 23/2 26/20 27/7 28/15 28/20 29/9 30/12 30/19 32/14 33/7 36/1 36/3 36/8 36/20 36/24
**reviewing [2]** 20/17 26/19
**rid [1]** 9/15
**right [26]** 3/15 7/8 10/2 11/8 14/2 14/4 14/7 14/10 14/16 15/12 15/19 16/21 18/23 25/24 26/19 27/8 30/22 31/14 33/24 34/1 34/4 37/14 40/10 42/9 42/20 44/8
**rights [5]** 7/25 7/25 8/2 22/19 40/9
**rigorous [5]** 15/20 15/21 30/12 30/19 44/2
**rise [1]** 6/17
**risk [1]** 40/1
**road [1]** 35/14
**robust [1]** 28/23
**RODRIGUEZ [7]** 1/6 3/3 3/11 3/12 4/10 6/20 20/11
**Rodriguez' [2]** 27/17 27/19
**role [15]** 8/5 8/7 8/9 8/10 8/23 8/24 9/10 9/13 9/18 23/4 24/11 25/3 29/4 29/18 30/3
**Room [1]** 2/11
**RPR [1]** 45/13
**running [1]** 37/25
**runs [1]** 40/1
**rush [2]** 12/11 12/12
**rushing [1]** 14/8

**S**

**said [17]** 4/16 6/6 6/24 7/1 7/9 8/20 9/14 9/17 10/4 14/10 16/13 24/16 24/17 24/18 25/22 30/12 37/6
**sake [1]** 34/9
**same [1]** 32/24
**sand [1]** 43/19
**say [33]** 5/22 6/15 8/20 9/22 10/2 10/16 10/18 11/5 12/20

**S**


**say... [24]** 13/12 13/20 17/22 18/5 18/17 19/2 24/19 25/8 28/23 29/7 32/11 32/25 33/1 33/13 36/9 36/25 37/5 37/5 38/6 38/9 38/12 39/6 39/7 41/20
**saying [7]** 8/7 12/11 13/5 15/22 16/2 16/11 23/11
**says [9]** 5/3 5/18 6/15 8/11 14/14 35/2 36/5 36/11 36/12
**scene [2]** 26/4 35/3
**schedule [16]** 3/16 5/15 11/10 11/12 11/17 11/24 12/2 12/19 14/23 15/7 23/15 30/16 37/3 39/19 39/22 41/5
**scheduling [7]** 5/18 5/23 6/19 7/2 11/14 11/16 13/5
**search [5]** 27/13 27/16 27/19 27/24 27/24
**searchable [1]** 16/24
**second [3]** 13/24 24/12 28/4
**section [1]** 35/25
**securities [1]** 9/23
**see [9]** 13/15 16/17 17/4 19/6 34/7 41/2 41/4 42/4 43/9
**seek [5]** 5/20 5/21 15/18 22/12 35/15
**seeking [1]** 29/10
**seem [1]** 8/3
**seems [3]** 15/2 23/22 34/17
**seen [1]** 26/7
**selection [1]** 4/22
**sense [2]** 42/13 43/15
**sentence [4]** 4/14 6/11 20/12 30/1
**separate [1]** 20/18
**September [2]** 1/5 17/24
**September 2nd [1]** 17/24
**serious [1]** 4/4
**Services [1]** 19/3
**set [16]** 5/10 12/9 13/10 13/17 17/19 22/23 24/23 25/7 25/7 25/8 34/21 38/5 38/9 38/14 39/19 43/10
**sets [3]** 5/11 12/18 37/3
**setting [8]** 3/16 3/21 7/3 7/17 11/12 14/14 23/5 37/18
**several [2]** 18/24 27/4
**share [3]** 20/3 33/4 33/5
**she [12]** 18/21 22/16 24/2 25/7 29/10 30/13 30/17 30/18 30/24 44/2 44/3 44/3
**Sherry [3]** 2/9 45/4 45/13
**short [1]** 21/25
**shorter [1]** 32/3
**shortly [2]** 25/21 26/12
**should [15]** 4/22 10/5 12/2 12/3 15/21 22/19 22/23 23/4 24/12 25/5 31/16 37/21 38/7 39/18 42/25
**shouldn't [1]** 11/12
**Shrewsbury [1]** 18/21
**shutdown [1]** 19/7
**side [1]** 9/5
**sides [1]** 34/14
**significance [1]** 40/11
**since [3]** 3/18 9/11 31/9
**Sines [2]** 9/2 9/8
**sit [3]** 10/19 12/13 41/9
**sitting [1]** 18/19
**situation [7]** 9/7 9/16 11/4 18/17 19/13 33/19 33/24
**six [2]** 15/25 31/9
**Sixth [7]** 6/13 6/15 10/2 10/13 11/15 39/25 42/10
**slow [1]** 30/19
**small [1]** 19/11
**so [79]**
**social [2]** 17/3 27/19
**software [1]** 27/22
**some [17]** 22/23 23/16 24/5 24/6 25/13 27/5 27/21 27/25 28/8 28/11 32/1 33/12 34/17 36/14 38/23 40/1 43/23
**somebody's [1]** 4/5
**someday [1]** 40/2
**something [23]** 5/25 8/25 10/24 14/11 14/13 14/18 17/4 17/12 17/20 18/7 18/8 20/1 20/2 20/6 20/8 20/12 20/13 33/4 34/1 38/1 39/8 40/14 43/8
**sometimes [1]** 27/22
**somewhat [4]** 18/22 32/2 32/2 32/3
**somewhere [2]** 25/25 33/3
**soon [1]** 19/5
**sort [2]** 28/19 30/14
**sorting [1]** 17/15
**sound [1]** 35/10
**speak [5]** 14/21 15/4 34/16 42/22 42/22
**specific [1]** 43/9
**specifics [2]** 16/12 20/5
**speed [1]** 23/21
**spot [3]** 16/4 16/11 19/23
**squarely [1]** 5/14
**St [1]** 1/13
**stage [19]** 3/25 6/21 6/23 6/25 7/1 7/7 7/12 8/8 8/17 8/25 9/5 10/23 17/11 18/8 18/16 31/24 36/20 39/24 44/1
**stages [1]** 36/25
**standards [4]** 20/13 20/14 20/15 35/19
**start [1]** 3/19
**started [2]** 11/14 23/11
**starting [1]** 3/5
**state [1]** 3/4
**statement [3]** 4/1 34/19 39/14
**statements [8]** 17/8 26/2 26/3 26/14 26/18 27/6 35/2 35/8
**STATES [12]** 1/1 1/3 1/10 3/3 3/7 3/17 22/12 22/14 24/10 24/14 40/17 42/1
**status [1]** 16/21
**statute [3]** 8/10 8/14 40/12
**statutory [3]** 22/25 22/25 24/24
**Ste [2]** 1/14 2/6
**step [9]** 15/2 20/24 21/9 21/10 21/21 21/22 22/25 29/22 38/21
**steps [3]** 12/4 23/1 29/14
**still [12]** 15/12 16/22 16/25 17/6 17/21 18/1 26/19 26/21 27/12 30/14 33/14 35/21
**strategies [2]** 32/23 32/25
**strategy [1]** 16/5
**Street [1]** 2/6
**strength [1]** 16/18
**strong [1]** 10/21
**stuff [1]** 17/12
**submission [9]** 16/1 20/20 20/24 21/5 21/20 30/23 39/9 43/2 43/24
**submit [5]** 4/4 7/3 28/24 36/5 36/10
**submitted [1]** 15/10
**subpoena [1]** 28/8
**subsequent [1]** 40/21
**substantially [2]** 7/24 8/1
**substantive [1]** 22/19
**sufficient [2]** 16/1 20/16
**sufficiently [1]** 38/14
**suggesting [1]** 39/6
**suggests [1]** 13/25
**Suite [1]** 1/20
**superhuman [1]** 33/11
**Supp [1]** 42/7
**supplemental [2]** 21/5 21/19
**supplementary [1]** 18/10
**suppose [3]** 12/17 17/16 40/1
**Supreme [6]** 4/16 7/4 7/5 7/8 7/15 10/8
**sure [18]** 3/22 9/20 10/2 11/19 12/24 14/22 14/24 23/12 23/12 23/17 24/3 30/7 30/10 39/5 39/11 39/13 41/6 43/23
**suspect [2]** 14/19 14/21
**sympathetic [1]** 30/2
**system [1]** 11/1


**T**


**table [2]** 3/8 13/24
**take [5]** 19/13 22/21 23/16 24/4 41/20
**taken [1]** 42/19
**takes [3]** 17/25 20/9 30/13
**taking [1]** 19/12
**talk [9]** 7/16 10/25 13/24 17/1 23/15 34/3 34/24 35/1 42/1
**talked [1]** 15/20
**talking [11]** 5/13 5/25 6/19 11/11 11/14 12/2 15/25 24/5 40/24 42/5 43/21
**talks [4]** 5/2 7/15 11/1 35/14
**tell [7]** 12/23 12/23 15/15 16/21 17/23 18/21 23/7
**ten [1]** 15/13
**term [1]** 27/15
**terms [2]** 27/13 43/20
**than [11]** 4/5 4/15 15/13 16/12 28/2 30/1 32/2 32/3 33/11 39/8 43/4
**thank [13]** 3/20 3/20 11/23 22/9 34/6 34/8 37/14 42/9 42/18 42/21 44/4 44/7 44/8
**thanks [1]** 10/19
**that [400]**
**their [5]** 3/4 16/19 18/23 31/7 41/9

**T**


**them [10]** 16/7 26/9 26/11 26/11 26/12 31/9 34/3 37/10 43/7 43/9
**themself [1]** 15/5
**themselves [1]** 38/22
**then [21]** 9/18 10/12 11/9 11/10 12/12 12/13 12/19 15/23 19/16 25/5 29/9 29/18 29/25 32/15 33/4 35/25 36/1 38/24 41/23 42/24 43/10
**there [75]**
**there's [1]** 35/24
**therefore [1]** 23/6
**these [3]** 4/21 39/15 42/16
**they [51]**
**thing [6]** 8/24 11/7 13/22 17/16 31/2 41/19
**things [17]** 11/25 13/18 14/15 14/25 16/13 17/8 24/3 24/25 26/11 27/22 28/1 28/2 28/9 29/15 30/5 35/25 42/17
**think [82]**
**thinking [6]** 11/25 33/6 36/14 37/15 38/4 38/23
**this [94]**
**thorough [1]** 27/7
**thoroughly [1]** 17/5
**those [16]** 7/4 7/5 13/10 19/14 20/19 22/18 23/5 24/25 25/22 26/5 27/7 28/9 29/14 33/22 36/24 38/17
**though [7]** 7/10 7/10 9/6 10/4 20/13 21/15 40/15
**thought [3]** 21/4 40/5 42/10
**thoughtful [2]** 24/7 24/15
**three [3]** 18/19 29/14 34/9
**through [8]** 4/22 6/1 17/15 19/8 26/11 27/8 28/7 28/12
**time [27]** 14/12 18/5 19/15 19/22 20/3 20/9 20/21 23/17 23/20 23/25 24/6 24/12 28/11 30/8 31/8 31/20 31/23 32/1 32/18 34/18 36/3 36/8 36/21 37/25 41/12 41/20 42/21
**timing [6]** 5/14 5/19 21/16 21/23 21/24 21/25
**today [4]** 18/19 28/6 42/25 43/5
**together [4]** 41/10 42/16 43/7 43/17
**told [5]** 12/7 19/10 31/4 31/9 36/7
**tomorrow [2]** 9/14 29/3
**ton [1]** 23/21
**tonight [1]** 38/13
**too [3]** 30/9 32/23 32/24
**took [1]** 41/24
**topics [1]** 28/10
**Tortorice [2]** 1/12 3/8
**tranche [2]** 25/12 26/22
**transcript [2]** 1/9 45/5
**transcripts [1]** 28/9
**travel [1]** 19/19
**trial [15]** 4/22 5/18 7/8 7/23 7/25 8/2 13/7 14/24 16/2 18/20 29/19 40/9 40/10 43/25 43/25
**trouble [1]** 26/7
**true [2]** 22/22 45/5
**trusting [1]** 18/15
**try [3]** 27/25 29/12 29/24
**trying [1]** 18/1
**turns [1]** 16/6
**two [10]** 8/4 13/14 19/11 21/18 23/19 24/9 25/14 25/15 25/22 36/7
**two-part [1]** 13/14
**type [3]** 43/18 43/19 44/2
**types [1]** 42/17


**U**


**U.S [2]** 2/10 42/7
**ultimate [2]** 5/13 5/20
**ultimately [8]** 5/7 6/3 13/4 22/22 23/3 23/9 29/25 33/19
**under [12]** 7/2 8/5 8/20 16/19 20/10 27/22 27/23 28/2 29/7 29/16 32/4 33/15
**undergoing [1]** 26/20
**understand [6]** 23/18 31/25 32/12 33/5 35/19 39/5
**understanding [1]** 37/25
**understands [1]** 30/13
**understate [1]** 18/5
**UNITED [12]** 1/1 1/3 1/10 3/3 3/7 3/17 22/12 22/14 24/10 24/14 40/17 42/1
**unless [1]** 43/21
**unquestionably [1]** 13/16
**unreasonable [1]** 24/18
**until [6]** 12/9 12/10 14/10 23/16 35/20 43/25
**up [12]** 5/8 15/12 17/22 19/7 21/20 21/22 21/23 23/21 24/10 35/20 38/8 41/20
**us [63]**
**USAO [1]** 1/13
**use [2]** 38/3 38/15
**used [2]** 22/20 31/11
**using [1]** 27/21
**usually [1]** 36/19


**V**


**valuable [1]** 12/15
**various [1]** 40/5
**VENABLE [1]** 1/16
**versus [4]** 3/3 8/21 8/22 34/13
**very [15]** 4/3 5/5 7/8 9/16 10/9 10/21 20/7 20/15 21/25 23/22 26/8 31/24 38/18 41/17 43/7
**Victor [2]** 2/5 3/12
**video [4]** 25/15 25/19 25/22 26/13
**view [5]** 28/14 30/2 40/22 41/22 42/24
**views [1]** 32/9
**vis [2]** 16/22 16/22
**volume [1]** 18/1
**voluminous [1]** 16/15
**vs [1]** 1/5


**W**


**waiting [1]** 36/9
**Walnut [1]** 2/6
**want [27]** 3/24 10/16 12/20 16/4 16/11 18/4 18/17 19/23 20/1 20/4 23/12 24/16 28/24 30/10 31/9 33/1 33/5 34/5 34/16 38/9 38/25 39/6 39/13 40/22 41/20 42/17 43/12
**wanted [1]** 20/2
**wants [5]** 3/22 10/1 22/4 25/8 38/10
**warrant [1]** 27/24
**warrants [4]** 27/13 27/16 27/19 27/24
**was [25]** 10/9 10/22 11/13 11/25 11/25 13/21 13/22 14/18 15/15 15/16 17/17 25/18 26/13 27/21 28/1 28/2 31/1 31/10 31/10 36/15 38/4 39/10 40/6 42/5 42/11
**Washington [5]** 1/5 1/14 1/17 1/20 2/11
**wasn't [1]** 14/17
**way [7]** 5/6 7/19 22/20 24/8 30/17 32/24 43/22
**we [191]**
**we'll [6]** 26/6 32/15 32/19 33/4 34/3 43/10
**wearing [1]** 25/18
**week [3]** 18/20 19/8 21/18
**weeks [8]** 21/19 25/15 25/16 25/23 31/5 31/10 36/7 37/16
**weigh [1]** 12/15
**weight [1]** 21/13
**weighty [4]** 4/2 4/3 4/6 30/13
**welcome [1]** 42/15
**well [13]** 3/14 8/4 13/12 16/10 21/8 24/19 25/16 32/21 33/1 35/2 35/14 35/24 40/17
**went [1]** 5/22
**were [8]** 9/22 10/11 10/18 20/2 21/4 26/19 31/1 32/25
**West [1]** 2/6
**what [66]**
**whatever [10]** 12/4 12/14 13/2 17/19 25/6 25/7 25/9 38/9 38/15 39/13
**when [25]** 7/16 9/1 10/10 11/19 11/25 12/3 12/4 15/17 15/22 19/10 20/20 21/17 23/5 23/8 23/20 25/18 26/23 30/16 34/23 35/1 35/19 37/23 38/5 41/1 42/17
**whenever [2]** 38/8 38/14
**where [15]** 4/5 7/15 9/23 10/15 12/18 14/9 14/11 16/6 25/20 33/19 33/24 33/24 34/3 36/21 41/21
**Whereas [1]** 8/2
**whether [29]** 4/2 4/6 4/10 6/11 6/12 6/22 7/23 8/22 8/25 9/7 9/8 12/1 13/18 15/11 15/17 17/1 20/11 20/22 22/12 22/15 23/25 24/11 24/21 25/25 26/1 33/6 35/17 40/4 41/22
**which [26]** 5/11 5/16 7/12 9/2 9/4 12/4 13/7 14/2 15/15 16/18 17/9 19/14 20/17 23/1 25/18 27/4 30/18 31/13 31/16 31/18 33/21 34/11 34/12 35/21 36/24 42/6
**while [2]** 12/14 36/9

**W**

**who [5]** 6/5 12/12 15/9 18/14 19/16
**whole [2]** 12/10 18/10
**why [20]** 3/18 3/25 6/4 9/11 9/20 11/19 12/17 12/19 22/8 23/16 24/4 25/14 30/16 31/20 32/10 32/17 33/5 34/21 39/11 41/12
**will [42]** 4/3 4/8 4/12 4/17 4/20 4/21 5/11 8/19 9/24 11/5 12/22 12/23 14/20 15/4 15/15 17/6 18/5 19/2 19/5 19/6 21/16 21/24 22/7 22/12 23/9 23/23 24/1 24/2 27/23 28/15 28/23 29/7 29/23 30/12 31/21 35/14 35/17 35/22 37/23 41/2 43/6 43/24
**willing [2]** 20/11 31/22
**wisdom [3]** 6/8 34/12 34/17
**withdraw [2]** 29/13 35/15
**withdrawing [1]** 35/20
**within [10]** 5/14 9/6 12/5 13/3 25/14 25/22 30/15 37/9 39/18 41/8
**without [3]** 12/21 14/9 24/2
**witness [2]** 26/18 39/14
**won't [2]** 24/1 34/22
**wonderful [1]** 19/17
**wondering [1]** 13/22
**word [2]** 6/15 16/24
**work [10]** 13/9 19/1 19/14 19/19 23/5 23/5 32/13 33/3 43/6 43/17
**working [5]** 13/25 17/10 28/12 42/16 43/7
**works [1]** 19/17
**world [1]** 14/12
**worn [5]** 25/17 25/20 26/4 26/14 35/3
**would [44]** 3/4 8/20 10/2 11/5 12/4 12/6 12/20 13/3 15/18 16/2 17/18 17/21 19/11 19/15 19/23 19/24 20/1 20/23 21/3 21/20 26/12 28/10 28/25 31/6 31/17 31/18 31/21 32/18 33/1 33/7 34/9 36/17 36/21 36/25 38/16 39/7 39/12 39/13 40/17 41/9 41/13 41/16 43/9 43/17
**wouldn't [2]** 24/19 36/21
**written [1]** 30/22
**wrong [1]** 40/2
**wrote [1]** 24/15

**Y**

**years [1]** 14/24
**yes [6]** 21/8 21/9 22/11 28/23 36/12 37/12
**yet [6]** 8/18 14/18 26/1 26/2 32/13 39/1
**York [1]** 9/4
**you [121]**
**Youngblood [2]** 6/10 9/1
**your [37]** 3/6 3/10 3/13 3/20 3/21 8/4 13/8 17/19 19/7 20/23 22/9 22/11 24/9 24/12 24/13 24/16 24/23 27/3 27/21 28/4 28/6 28/14 29/12 30/2 32/15 32/25 33/13 33/16 34/6 34/8 37/14 38/19 39/11 42/21 43/22 44/4 44/7