**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 1:25-CR-224** |
| | : | |
| **ELIAS RODRIGUEZ** | : | |
| | : | |

## NOTICE REGARDING STATE OF DISCOVERY, PRETRIAL MOTIONS, AND JURY SELECTION LOGISTICS

As requested during the September 28, 2026 status conference, Elias Rodriguez, through undersigned counsel, provides the Court with this Notice in anticipation of the hearing on November 20, 2026, regarding the state of discovery, pretrial motions, and the potential logistics of jury selection in a death penalty trial.

### I. Status of Discovery

The government has made seven productions to date, containing over two and half terabytes of data. Since the last status conference, the government made three productions, one including approximately 1,500 documents and other files, one including just under one terabyte of CCTV footage, and one including over 2,000 documents and other files. Counsel for Mr. Rodriguez also provided the government with a two-terabyte hard drive on November 13, 2026, as requested by the government, for additional discovery. That hard drive has yet to be returned to counsel and no indication was provided by the government regarding what would be included in that production or the size, other than the need for a two-terabyte hard drive.

Counsel for Mr. Rodriguez sent a discovery letter to the government on November 12, 2026, making both general requests for discovery and identifying specific issues with the discovery provided to date. Mr. Rodriguez identified specific missing items, including FD302s

and their attachments, written notes from all interviews that produced FD302s, and many complete and signed search warrants and subpoenas, and the complete returns from those search warrants and subpoenas (including in the format originally received by the government). Mr. Rodriguez also raised concerns with the organization of the discovery where FD302s and their exhibits are not produced sequentially and there is no information provided to identify which exhibits go with which FD302s.

In addition to these specific concerns, Mr. Rodriguez requested unredacted copies of everything provided in discovery. The protective order in this case covers how "Sensitive" material must be treated. ECF No. 11 at 2-5. To the extent there is "Sensitive" information in any of the discovery, it should not be redacted, but the document should be marked "Sensitive" pursuant to the protective order.

Finally, the discovery letter requested many additional categories of documents that were not included in the productions to date, including but not limited to communications, Bureau of Prisons information, grand jury testimony, instructions, and subpoenas, and any additional requests or subpoenas.

A copy of the letter was filed under seal as Exhibit A. Because the government has yet to respond to Mr. Rodriguez's discovery letter, it may be difficult to address many of these requests at the hearing on November 20, 2026.

## II. Pretrial Motions

Consistent with the Court's September 28th Minute Order, the defense anticipates filing at least 10 pretrial motions, pursuant to Fed. R. Crim. P. 12(b)(3)(B), on December 11, 2026. These motions will raise facial challenges to the Superseding Indictment as well as facial challenges to the charging statutes. The defense expects to file additional motions to dismiss counts in the Indictment on other grounds, as well as motions that challenge the government's

ability to pursue the death penalty in this case. As to those motions, counsel will request a briefing schedule at the hearing on November 20, 2026.

### III. Logistics of Jury Selection in a Death Penalty Case

At the September 2026 status conference, the Court asked the parties to submit sample jury questionnaires used in other death penalty cases and inquired about the logistics and process involved in selecting a jury in a death penalty case, recognizing the need to prepare the jury office to conduct such a process. Attached to this filing as Exhibits B-D are sample jury questionnaires from *United States v. Gendron*, No. 1:22-cr-00109-LJV, ECF No. 615 (W.D.N.Y. June 26, 2026) (Exhibit B); *United States v. Bowers*, No. 2:18-cr-00292-RJC, ECF No. 1004 (W.D. Pa. March 3, 2023) (Exhibit C); and *United States v. Saipov*, No. 1:17-cr-00722-VSB, ECF No. 476-1 (S.D.N.Y. Aug. 9, 2022) (Exhibit D).

In addition to those samples, the defense submits this summary of the jury selection process in *United States v. Gendron*, which is currently underway in the Western District of New York. The parties in *Gendron* filed Joint Proposed Voir Dire and Jury Selection Procedures on February 3, 2025, over a year before the jury selection process even began. *See United States v. Gendron*, No. 1:22-cr-00109-LJV, ECF No. 271 (W.D.N.Y. Feb. 3, 2025) (Exhibit E). The jury selection process followed the steps in the parties' proposal.

First, the Clerk of Court or Jury Office sent out a "one-step summons/qualification form" to individuals randomly selected from the master jury wheel. That initial qualification form focused entirely on hardship, availability, age, or other exemptions that could easily be determined. It did not include any specific questions about the case itself, other than the anticipated trial dates to screen for hardship and availability. For *Gendron*, when the trial was expected to begin in August 2026, that initial form was sent to approximately 3,000 prospective jurors in March 2026. The goal was to identify between 1,000 and 1,200 prospective jurors to

complete the Special Juror Questionnaire. The initial qualification form was completed either (1) on paper and mailed back to the jury office or (2) on the jury office website.

After the initial responses were received from the approximately 3,000 initial qualification forms, the Court, with input from the parties, identified which potential jurors to excuse. After that process, approximately 1,200 prospective jurors remained. Those prospective jurors then came to the courthouse (in groups of 50-70, during either a morning or afternoon session) to complete the special juror questionnaire. The following minute entry from one day of juror appearances to complete the questionnaire also notes that counsel were permitted to be present.

| | | |
|---|---|---|
| 06/16/2026 | 595 | Minute Entry for proceedings held before Hon. Lawrence J. Vilardo: Continuation of Jury Selection as to Payton Gendron held on 6/16/2026. Venire: 62 (morning) and 60 (afternoon) prospective jurors appeared. Jurors instructed and sworn to complete questionnaire. Continuation of Jury Selection scheduled for 6/17/2026 at 8:45AM. Defendant remanded. Appearances. For government: AUSA Maeve Huggins, AUSA Charles Kruly and DOJ Trial Attorney Michael Warbel. For defendant: AFPD Sonya Zoghlin and AFPD MaryBeth Covert, Julie Brain and Theresa Duncan. Defendant present in USMS Custody. (Court Reporter Laurel Tubbs.)(CMD) (Entered: 06/17/2026) |

It was important for the jurors to complete the special juror questionnaire in person so that the Court and the parties would be sure that the answers reflected that individual juror's answers and not the answers of anyone else who might be present if the questionnaires were mailed to jurors to complete at home. After each session, the Clerk's Office or the Jury Office scanned in all the questionnaires and provided them electronically to the parties on a rolling basis. Completing the questionnaires took approximately three weeks.

Next, the parties reviewed the questionnaires, met and conferred, and compiled a list of stipulated strikes for cause or hardship based on the responses. After those stipulations, the pool of prospective jurors was cut in about half, with between 500-600 remaining. Each of those remaining prospective jurors was then required to appear in Court for individual voir dire. The jurors appeared in groups of approximately 10 per day. After some initial instructions and a few

preliminary group questions where the jurors answer either "yes" or "no," each juror was brought out individually for attorney-conducted voir dire. It is counsel's understanding that the Court in *Gendron* intends to qualify at least 70 jurors prior to engaging in peremptory strikes. Individual voir dire in *Gendron* began on October 13, 2026, and is still underway.

The jury selection process will require a significant amount of work from the Court, the Clerk's Office, the Jury Office, and the parties. It is a lengthy and unique process given that this is a death penalty case. The process in *Gendron* is instructive. However, given the unique makeup of the District of Columbia, it is possible a larger number of initial qualification forms will need to be mailed out and a larger number of prospective jurors will need to be brought in for individual voir dire.

Mr. Rodriguez submits this Notice to provide the Court with some additional information on discovery, motions, and the jury selection process prior to the status conference on November 20, 2026.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/ Diane Shrewsbury*
Elizabeth Mullin
Diane Shrewsbury
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

Eric K. Klein
Johnson & Klein, PLLC
5398 Manhattan Circle
Boulder, CO 80303
(303) 444-1885

Victor J. Abreu
Supervisory Assistant Federal Defender
Federal Community Defender Office, EDPA
601 Walnut Street, Ste 545 West
Philadelphia, PA 19106
(215) 928-0520